# WHITE ET AL. *v.* UNITED STATES.*

No. 96.   Argued November 16, 17, 1938.—Decided December 5, 1938.

---

*Together with No. 97, *White, Executor, v. United States,* also on writ of certiorari to the Court of Claims.

*Mr. John P. Ohl* for petitioners.

*Mr. Edward J. Ennis,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Messrs. J. Louis Monarch* and *A. F. Prescott* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

The question decisive of this case is whether, under §§ 23 and 101 of the Revenue Act of 1928, 45 Stat. 791, upon a liquidation of a corporation, stockholders' losses from their investment in its stock held for more than two years are ordinary losses deductible in full from gross income, or capital losses, $12\frac{1}{2}\%$ of which is deductible under § 101 from the tax as computed without regard to such losses.

The decedent in each of these cases made an investment represented by shares of stock in a corporation. Upon complete liquidation of the corporation, more than two years later, the total liquidating dividends on the stock amounted to less than the cost of the investment. In their income tax returns for 1929 petitioners deducted from gross income the losses of their respective decedents. The commissioner ruled that the losses were capital net

losses of which only 12½% was deductible, as provided by § 101, and he accordingly found deficiencies, which petitioners paid.

In the present suits, brought by petitioners in the Court of Claims to recover the payments of the deficiencies as overpayments of 1929 tax, recovery was denied. 86 Ct. Cls. 125; 21 F. Supp. 361. We granted certiorari, October 10, 1938, to resolve a conflict between the decision below and that of the Court of Appeals for the Ninth Circuit in *Chester N. Weaver Co.* v. *Commissioner,* 97 F. 2d. 31, certiorari granted, October 10, 1938, which arose under related sections of the 1932 Revenue Act. [See next case.]

Section 23 (e) of the 1928 Act declares that "In computing net income there shall be allowed as deductions . . . losses sustained during the taxable year . . . (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; . . ." And sub-section (g) provides: "The basis for determining the amount of deduction for losses sustained . . . shall be the same as is provided in section 113 for determining the gain or loss from the sale or other disposition of property."

These provisions of § 23 are qualified and restricted by § 101, which prescribes rates of tax applicable to capital net gains and the extent to which capital net losses are deductible in arriving at net taxable income. Section 101 (c) (1) and (2) of the Revenue Act of 1928 defines "capital gain" as a "gain from the sale or exchange of capital assets" and "capital loss" as a "deductible loss resulting from the sale or exchange of capital assets." Section 101 (c) (3) and (4) declares: " 'Capital deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year . . .;" and " 'ordinary

deductions' means the deductions allowed by section 23 other than capital losses and capital deductions." By § 101 (c) (5) and (6) a "capital net gain" or "loss" results from the sale of "capital assets," which are defined by § 101 (c) (8) as "property held by the taxpayer for more than two years," not including "stock in trade . . . or other property" held by the taxpayer "primarily for sale in the course of his trade or business."

Sections 23 and 101 place capital gains and losses as thus defined on a different basis from other types of gains and losses for the purpose of computing the tax. By § 101 (a) a capital net gain as defined by § 101 (c) (5) may, at the option of the taxpayer, be assessed at the rate of 12½% in lieu of all other taxes, and by § 101 (b) a capital net loss, defined by § 101 (6) as "the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain," may be deducted, only to the extent of 12½%, from the tax as computed without regard to the capital net loss. These sections, read together with §§ 12, 21 and 22, presently to be discussed, thus provide a complete scheme for ascertaining capital gains and losses from the sale or exchange of property and for bringing them into the computation of the tax on net income, a scheme distinct from that applicable to other types of gains and losses resulting in ordinary net income, including those from sales and exchanges of property not capital assets.

The losses here sustained are concededly losses on investments of capital, entitled to recognition in the computation of taxable net income, but petitioners' contention is that as the losses did not result from a sale or exchange of the stock they are not capital losses within the meaning of § 101, which limits the deduction of such losses, and that in consequence they fall into the category of ordinary losses, deductible in full under § 23. The answer to this contention turns upon the meaning and ef-

fect of § 115 (c), which relates to distributions by corporations and appears in Supplement B of the 1928 Act. The section provides in part:

"Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. . . ." Section 111 contains the provisions for computation of gain or loss from the sale or other disposition of property and refers, as does § 23 (g), to § 113 as affording the basis for determining gain or loss upon sales or exchanges of property. By § 112 (a) it is provided that "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." [1]

Petitioners concede that the command of § 115 (c) that amounts distributed in complete liquidation of a corporation "shall be treated as in full payment in exchange for the stock" and that the "gain or loss . . . shall be determined under section 111," requires the gain or loss upon liquidation to be determined as are gains or losses upon sale of the stock under §§ 111, 113. The same method is adopted by 101 for determining gains or losses from sales of capital assets.[2] But they insist that the qualifica-

---

[1] The enumerated exceptions, none of which are applicable in the present case, relate to specified types of gains or losses upon exchange of property, some of which are excluded from the recognition accorded generally by the section to such gains and losses.

[2] The method of computing capital gains under § 101 is in substance that of §§ 111, 112 and 113, which is identified by §§ 22 and 23 with that prescribed for ascertaining the gain to a stockholder upon corporate liquidation by § 115. By § 22 (d) it is provided: "Distributions by corporations shall be taxable to the shareholders as provided in

tion that gain or loss "shall be recognized only to the extent provided in section 112" and the fact that the provisions of § 101 apply only to cases of sales or exchanges exclude the stockholders' gain or loss upon liquidation, which is not a sale or exchange, from the operation of the provisions of § 101 governing the computation of the tax.

Sections 101 and 115 (c) are found in the provisions supplemental to the general provisions of sub-title B of the 1928 Revenue Act, which is concerned with rates of tax and computation of net income. Section 101 appears in Supplement A, relating to rates of tax, and § 115 in Supplement B, concerning computation of net income. Both supplements serve to modify or explain the general provisions. ". . . the Supplemental Provisions are those which apply only to extraordinary classes of taxpayers or which apply only to the extraordinary transactions of ordinary classes of taxpayers." Report, Committee on Ways and Means, No. 2, 70th Cong., 1st Sess., p. 12. From the arrangement and general plan of the Act it is evident that the effect of §§ 101 and 115 upon each other is not to be ascertained alone by the comparison of the two sections or by noting the absence of any reference to either by the other, but by noting and comparing the effect of each upon the general provisions, to which reference must be made in the first instance for all computations of income tax.

---

section 115"; and "(e) In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in sections 111, 112, and 113." Section 101 in terms provides that " 'Capital deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year." And § 23 (g) provides: "The basis for determining the amount of deduction for losses sustained . . . shall be the same as is provided in section 113 for determining the gain or loss from the sale or other disposition of property."

Sections 12, 21, 22 and 23, found in sub-title B, General Provisions, to which §§ 101 and 115 are supplementary, govern computation of net income and of the tax. Subsection (c) of § 12, which fixes the rates of surtax, refers specifically to § 101 for the rate and computation of tax on capital net gains and losses.[3] Section 21 declares that net income means gross income computed under § 22, less the deductions allowed by § 23. As already noted, § 23 (e), (g), providing for deductions of losses on sales or exchanges of property, is restricted in its operation by the provisions of § 101. Otherwise, § 101 would have no application to deductible losses. These general provisions thus incorporate by reference those of § 101 and give to them controlling effect in the computation of the tax in cases of capital gains or losses upon the sale or exchange of capital assets. In addition, § 22 (d) provides that "Distributions by corporations shall be taxable to the shareholders as provided in section 115," which in turn, as already noted, provides in paragraph (c) that liquidating dividends "shall be treated as in full payment in exchange for the stock," and that resulting gains or losses determined, as in the case of sales or exchanges of property, under § 111, are to be "recognized only to the extent provided in section 112," which also deals with sales and exchanges.

Section 115 (c) and §§ 111 and 112, to which it refers, standing alone give no clue to the part which a stockholder's loss on liquidation is to play, in computation of the tax, more than they give in the case of gains and losses

---

[3] § 12 (c): "Capital net gains and losses.—For rate and computation of tax in lieu of normal and surtax in case of net incomes of not less than $30,000, approximately, or in case of net incomes, excluding items of capital gain, capital loss, and capital deductions, of not less than $30,000, approximately, see section 101."

Only in the case of incomes in excess of $30,000, approximately, do the aggregate of the normal and surtax exceed the 12½% rate provided for in § 101.

upon sales or exchanges of property. In each case they tell how the gain or loss is to be "determined" and declare that it shall be "recognized." But as § 115 says that the gain or loss upon liquidation is to be "recognized" only to the extent to which gains or losses upon sales or exchanges of property are recognized by § 112, it follows that in one case, as in the other, we must turn to the general provisions of the Act to learn what recognition is to be given to the gains or losses under §§ 12, 22 and 23, as supplemented by § 101. Admittedly the recognition accorded by § 112 to gains and losses on sales of capital assets is controlled by § 101, and § 115 (c), with its reference to § 112, is explicit that gains and losses upon liquidations are to receive the recognition accorded to gains and losses upon sales of property. Consequently the recognition required by § 115 (c) of gains and losses on liquidations must, we think, be taken to be the same as that accorded to gains and losses upon sales of property in the computation of the tax under the general provisions to which § 115 and § 112 are supplementary and to be subject to the same restrictions as are imposed upon recognition of gains and losses from sales by the provisions of the supplementary section 101. Stockholders' gains and losses upon liquidation of the corporation are thus taxed on the same basis as gains or losses upon sales and exchanges of property, with the rate of tax and deductions prescribed by § 101.

If this conclusion were doubtful, doubts would be put at rest by the judicial construction of § 115 (c) as it appeared in the 1918 Act and by the legislative history of §§ 101 and 115. The substance of the first sentence of § 115 (c) of the 1928 Act appeared, but without the reference to §§ 111 and 112, in § 201 (c) of the 1918 Act, which provided that "Amounts distributed in the liquidation of a corporation shall be treated as payments in

exchange for stock or shares, . . ."[4]   In *Hellmich* v. *Hellman,* 276 U. S. 233, it was held that this clause required a stockholder's gains upon liquidation to be treated as gains from the sale of property and therefore subject to the normal tax, although they were distributions from corporate earnings, and, under §§ 201 (a), (b) and 216 (a) dividends paid from such earnings were free from normal tax.   The provisions of § 115 (c) prescribing the treatment of liquidating dividends were thus, from the beginning, taken to refer to the computation of the tax as well as to the determination of the gain or loss.

The addition to the section in the 1924 and later Acts of the direction that gain or loss should be determined under the section corresponding to § 111 of the 1928 Act and recognized only to the extent provided in the section corresponding to § 112 of that Act requires no different result.   For reasons already given it supports the conclusion that § 115 (c), like its precursor, § 201 (c) of the 1918 Act, as construed in *Hellmich* v. *Hellman, supra,* placed shareholders' gains and losses from liquidations upon the same basis, for computation of the tax, as gains and losses upon the sale or exchange of property.   The reports of the Congressional Committees discussing § 201 (c) of the 1924 Act make it plain that that section, the relevant portion of which is identical with § 115 (c) of the 1928 Act, was intended to require gains upon corporate liquidations to be brought into the computation of

---

[4] Section 201 (c) of the 1918 Act, omitted from the 1921 Act, was continued, so far as now relevant, in the form in which it later appeared in § 115 (c) of the Act of 1928, as § 201 (c) of the 1924 and 1926 Acts, and as § 115 (c) of the 1932 and 1934 Acts.   The provisions of § 101 for computing capital gains or losses upon sales or exchanges and taxing them on a different basis from ordinary income first appeared as § 206 of the Revenue Act of 1921, which was continued as § 208 of the Revenue Acts of 1924 and 1926 and as § 101 of the Revenue Acts of 1928 and 1932.

the tax in the same manner as corresponding gains from sales.[5]

Article 625 of Treasury Regulations 74, interpreting §§ 101 and 115 (c) of the 1928 Act, states in part: "Any gain to the shareholder [from a distribution in liquidation of a corporation] may, at his option, be taxed as a capital net gain in the manner and subject to the conditions prescribed in section 101 . . ." This regulation is a clear recognition that §§ 115 and 101, when read with the other sections of the Act, are interdependent and require stockholders' gains upon liquidation to be taxed as are the corresponding gains on sales of property. The regulation, in identical form, first appeared in Article 1545 of Regulations 65 and 69, applicable to §§ 201 (c) and 208 of the Revenue Acts of 1924 and 1926, corresponding to §§ 115 (c) and 101 of the 1928 Act, and was continued in Article 625 of Regulations 77 with re-

---

[5] The Report of the Senate Committee on Finance (Report No. 398, 68th Cong., 1st Sess.) states at page 11: ". . . The bill treats a liquidating dividend as a sale of the stock, with the result that the gain to the taxpayer is treated not as a dividend subject only to the surtax but as a gain from the sale of property which may be treated as a capital gain. The treatment of liquidating dividends under the bill is substantially the same as provided for in the revenue act of 1918. A liquidating dividend is, in effect, a sale by the stockholder of his stock to the corporation; he surrenders his interest in the corporation and receives money in place thereof. Treating such a transaction as a sale and within the capital gains provisions is consistent with the entire theory of the act and, furthermore, is the only method of treating such distributions which can be easily administered."

The Report of the House Ways and Means Committee (Report No. 179, 68th Cong., 1st Sess.) states with respect to § 201 (c), at page 11: ". . . the Treasury has construed the existing law as taxing liquidating dividends, not as capital gains, but as dividends subject to the surtax rates. The proposed bill, as did the 1918 act, treats a liquidating dividend as a sale of the stock to the corporation and recognizes the true effect of such a distribution."

lation to the corresponding sections, 115 (c) and 101, of the 1932 Act.

The repeated reënactment of §§ 101 and 115 (c), as they appear in the Revenue Acts of 1924, 1928, and 1932, is upon accepted principles a Congressional adoption of the regulation as correctly interpreting those sections and is Congressional recognition that §§ 101 and 115 (c) are to be read together in order to ascertain the method by which gains and losses upon liquidation are to be taxed. The method, in the case of stock held for more than two years, is that applied by § 101 to capital gains and losses from the sale or exchange of property.

The fact that neither the decision in *Hellmich* v. *Hellman, supra,* nor the regulation deals specifically with losses does not admit of the conclusion that the stockholders' losses on liquidation are to be brought into computation of the tax on a basis different from gains and losses upon sales. Section 115 (c) makes no distinction between the recognition of gains and the recognition of losses, and if one is controlled by the provisions of § 101 the other must be. No adequate basis has been suggested for such a distinction.

We attach no significance to the circumstance that the provisions of § 101 of the 1928 Act first appeared in the 1921 Act, while the controlling provisions of § 115 (c) were enacted in the 1918 Act and in their final form in the 1924 Act. We accept petitioner's contention that all the provisions of § 101 are by its terms restricted to cases of sales or exchanges. But if, as we have said, § 115 (c) requires the tax in case of liquidations to be computed upon the same basis as in case of sales of the stock, alteration in the method of ascertaining the tax could be made more readily by adding § 101 or amending it than by amending § 115 (c), so long as it is the purpose to treat gains and losses on liquidation no dif-

ferently from gains and losses on sales. *Helvering* v. *Chester N. Weaver Co., post,* p. 293.

Petitioner argues that the construction which we think correct leads to the harsh and absurd consequence that a small liquidating dividend is more disadvantageous to the taxpayer than no distribution at all in the case where the stock has become worthless. This is an argument, more properly addressed to Congress, that the statute should have gone further than it did by providing that the loss in the case of worthless securities should be treated as a loss upon their sale, as was later done by § 23 (g) (2) of the 1938 Act. But it is not persuasive that we should disregard the language and history of the pertinent sections, with consequences equally harsh and absurd, to adopt the construction for which petitioners contend. Cf. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 321.

We are not impressed by the argument that, as the question here decided is doubtful, all doubts should be resolved in favor of the taxpayer. It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be. Here doubts which may arise upon a cursory examination of §§ 101 and 115 disappear when they are read, as they must be, with every other material part of the statute, *Hellmich* v. *Hellman, supra,* 237, and in the light of their legislative history. Moreover, every deduction from gross income is allowed as a matter of legislative grace, and "only as there is clear provision therefor can any particular deduction be allowed . . . a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435, 440.

We have considered, but find it unnecessary to discuss, other arguments of petitioners of lesser moment.

*Affirmed.*

MR. JUSTICE MCREYNOLDS, MR. JUSTICE BUTLER, and MR. JUSTICE ROBERTS dissent.