WESLEY V. E. TERHUNE, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93894, 93914–93920, 94088. Promulgated October 19, 1939.

*Ward Loveless, Esq., David W. Richmond, Esq., Lacy I. Rice, Esq., Frank J. Albus, Esq., Arthur R. Nelson, C. P. A.,* and *C. S. Goldston, C. P. A.,* for the petitioners.

*R. P. Hertzog, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Charles G. Smith; Frank C. Foreman; Thomas W. Martin; Shirley Carter Estate, by Shenandoah Valley National Bank of Winchester, Virginia; T. B. Patton; Clifford D. Grim; Gertrude A. McCormac, Trustee for H. B. McCormac, Jr.; Estate of Lewis F. Cooper, by Eugene B. Cooper, Administrator.

OPINION.

LEECH: Nine deficiencies in income tax for the calendar year 1934 are here in dispute. The proceedings were consolidated. The deficiencies, determined by the respondent, are as follows:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 93894 | Wesley V. E. Terhune | $6,990.28 |
| 93914 | Charles G. Smith | 2,615.67 |
| 93915 | Frank C. Foreman | 2,202.35 |
| 93916 | Thomas W. Martin | 1,079.72 |
| 93917 | Shirley Carter Estate, by Shenandoah Valley National Bank of Winchester, Virginia. | 2,934.27 |
| 93918 | T. B. Patton | 2,479.51 |
| 93919 | Clifford D. Grim | 335.64 |
| 93920 | Gertrude A. McCormac, Trustee for H. B. McCormac, Jr | 4,253.79 |
| 94088 | Estate of Lewis F. Cooper, by Eugene B. Cooper, Administrator | 2,389.89 |

The proceedings were submitted on separate stipulations of fact. The facts are found as stipulated. The first issue, common to all of the petitioners, is whether gains accruing to the petitioners upon the exchange of their preferred stock in the Berkeley Woolen Co., a West Virginia corporation, for cash and debenture bonds, pursuant to a plan of recapitalization, are taxable as distributions in partial liquidation or as gains from the sale or exchange of capital assets. The second, third, and fourth issue each concerns a different petitioner. The second issue presents the question as to whether stock of the McKown Orchard Co. became worthless in 1933 or 1934. The third issue raises the problem of whether respondent properly applied the "first in, first out" rule in computing the gain realized by one of the petitioners upon the recapitalization exchange. The last issue requires a determination of whether a note received by one of the petitioners in connection with the recapitalization exchange was a "security" within the meaning of section 112 (b) (3) of the Revenue Act of 1934 or the equivalent of cash.

For convenience, the facts and opinions on each question have been found and expressed separately.

*First Issue.*

The first question is whether the gains realized by all the petitioners upon the exchange of their preferred stock in the Berkeley Woolen Co. for cash and debentures are to be taxed in full or only to the extent of 30 percent, under section 117 (a) of the Revenue Act of 1934. All of the preferred stock here involved had been held for over 10 years, with the exception of 50 shares that the petitioner Frank C. Foreman had owned for 1½ years.

The corporate resolutions, covering the transactions at issue, recommended that the 7 percent cumulative preferred stock of the

company, constituting 5,000 shares of $100 par value, be retired. It was resolved that $250,000 of the stock should be retired in cash, payable November 1, 1934, and $250,000 of the stock should be exchanged for 5 percent debentures, to be issued November 1, 1934. The preferred stock was to be called for redemption according to the holdings of each preferred stockholder and was then to be canceled and retired. The concluding paragraph of the resolution recited that it was understood that the payment of $250,000, in cash, for the preferred stock, and $250,000, in debentures, was to be carried out only in the event that all of the holders of the stock should agree to accept cash and debentures. This statement was made necessary by the fact that the "certificate of reorganization", under which the preferred stock had been issued in 1924, had provided that the company might redeem the stock from time to time by "paying" the holder the par value thereof and a $5 per share premium.

At a subsequent directors' meeting, held November 20, 1934, the previous resolutions were amended to provide that $283,500 of the stock be redeemed in cash and $216,500 thereof be exchanged for debentures. The form of these debentures is not in evidence. They were debenture bonds carrying 5 percent interest and were issued on the basis of $105 for each share of preferred stock. The fair market value of these bonds at the time of the exchange was their face value.

The resolutions were carried out and each stockholder exchanged part of his stock for debentures and received cash for the balance. The Berkeley Woolen Co. continued in business following the exchange and the cancellation and retirement of its preferred stock

The Revenue Act of 1934 is controlling.

The respondent has treated the transaction as separable into two independent units for tax purposes, i. e., a corporate acquisition of part of its preferred stock for cash and the exchange of its debentures for the remainder of the preferred stock. He proposes no tax on the second unit but determined that the first was a partial liquidation under section 115 (i), and taxed the entire gain therefrom, under the sentence of section 115 (c) which provides that "Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income."

Petitioners contend that the reduction in the capitalization of the Berkeley Woolen Co. constituted a "recapitalization" and therefore a statutory reorganization under section 112 (g) (1) (D); that there was a "plan of reorganization" within the meaning of section 112 (b) (3), as an essential part of which plan and reorganization the company exchanged its debentures and cash for its preferred stock, because of which, section 112 (c) (1) applies; that the realized gain on the entire transaction is thus limited to the cash received,

as "other property or money", and is taxable at capital gain rates under the provisions of section 117 (a).

Undoubtedly there was a "recapitalization" and thus a statutory reorganization under section 112 (g) (1) (D). *Kistler* v. *Burnet*, 58 Fed. (2d) 687; *L. & E. Stirn, Inc.*, 39 B. T. A. 143; *R. D. Walker*, 34 B. T. A. 983. With equal clarity, we think, the record demonstrates that there was a "plan of reorganization" and that the exchanges of debentures and cash for the preferred stock were both essential and component parts of that plan and reorganization. *Miller* v. *Commissioner*, 103 Fed. (2d) 58; *Starr* v. *Commissioner*, 82 Fed. (2d) 964; *First Seattle Dexter Horton National Bank* v. *Commissioner*, 77 Fed. (2d) 45; *R. D. Walker, supra.* This conclusion seems inescapable in view of the resolution of the board of directors that the plan could not be consummated except "in the event only that all of the holders of the preferred stock of this Company shall agree to accept cash and debentures * * *." See *Edwin L. Dana*, 36 B. T. A. 231.

Moreover, as respondent contends and petitioners deny, the acquisition of some of the preferred stock for cash and its then cancellation, was a partial liquidation within the meaning of section 115 (i). *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118; *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156; *Palmetto Quarries Co.*, 30 B. T. A. 544; *Salt Lake Hardware Co.*, 27 B. T. A. 482; *Dill Manufacturing Co.*, 39 B. T. A. 1023. Cf. *William A. Smith*, 38 B. T. A. 317. Although it was an essential part of the reorganization and its plan, it did not thereby lose its tax significance as a partial liquidation. For the purpose of computing gain to petitioners, this partial liquidation is construed together with the exchange of debentures for the remainder of the preferred stock, as one transaction (*Millicent Turle Roelker*, 39 B. T. A. 967), but the total gain therefrom is taken into account under section 115, instead of being limited by section 117 (a).

The language of section 117 (a) which limits recognized gain on a capital transaction is not restricted in its purview. It seems clear, therefore, that it applies to exchanges included under section 112. See also Report of the Ways and Means Committee, 73d Cong., 2d sess., H. Rept. 704, pages 31 and 32. It is equally plain that when Congress, in the 1934 Act, added the sentence to section 115 (c) to the effect that, despite the provisions of section 117 (a), 100 per centum of the gain on a liquidating distribution should be recognized, its aim was to prevent the avoidance, by the stockholder, of surtax through the receipt of a liquidating, rather than an ordinary dividend. Report of Ways and Means Committee, 73d Cong., 2d sess., (H. Rept. 704, pp. 37, 38). Thus, the statutory scheme is that section 117 (a) shall limit the gain from reorganization sales and exchanges, unless

one of those sales or exchanges is a distribution of surplus in partial liquidation, in which event the amount of gain, realized under section 111 and recognized under section 112, is to be taxed in its full amount under section 115 (c). See *Helvering* v. *Chester N. Weaver Co.*, 305 U. S. 293; *White* v. *United States*, 305 U. S. 281.

The decision on the first issue will be for the respondent.

### Second Issue.

The second issue, relating to the petitioner Thomas W. Martin alone, is whether the stock of the McKown Orchard Co. became worthless in 1934, as contended by petitioner, or in 1933, as determined by respondent.

In 1930, the McKown Orchard Co., needing funds to finance its apple orchard, issued bonds in the amount of $28,000, secured by a first mortgage on its property and bearing interest at 8 percent, payable semiannually. No interest was paid on the bonds after July 20, 1931. On November 14 of that year the company gave a promissory note for $4,770; subsequently it defaulted on the note; and on January 16, 1932, receivers were appointed by the Federal District Court for the Northern District of West Virginia at the instance of the holder of the note. The receivers operated the orchard property thereafter. In 1932 the apple crop was small because of drought. In 1933 the crop was good but the market was depressed. Losses were sustained in both years.

By decree of the court having jurisdiction over the receivership, dated March 6, 1934, a special master was appointed to offer the properties of the Orchard Co. for sale on April 14, 1934, but no bids were received. Thereafter, at another public auction on June 20, 1934, the properties were sold for $9,000, of which $8,500 was for the real estate and $500 for the machinery and other personal property. The terms of the sale were $3,333.34 cash and the balance secured by deferred purchase money notes payable in one and two years. The court costs including expenses of the sale and the preferred claims exceeded the proceeds of the sale, leaving nothing for distribution to the stockholders.

Petitioner, who had purchased 50 shares of the stock of the Orchard Co. in 1920 at a cost of $5,000, claimed a loss of $5,000 on this stock in his 1934 return.

Respondent's determination that the stock became worthless in 1933 rather than in 1934 rests upon two grounds—first, that the Orchard Co. operated at a loss in 1933, and second, that no unusual event transpired between January 1, 1934, and June 20, 1934, the date of the public auction sale. He urges that petitioner has not shown that the stock had any value at the beginning of 1934.

While the evidence on this point is somewhat cryptic, it is clear that the attempt to put the Orchard Co. on its feet had not been abandoned in 1933. There was no crucial event in that year that would justify a finding that the stock then became worthless. An abundant crop may well have tempered the prospects of ruin. There was corporate life and the stock still reasonably had at least potential value. But, in 1934, the actual worth of the company was tested by the market; and the proceeds of the sale were actually insufficient to leave anything even for the bondholders. We do not think the stock was valueless at the close of 1933. The objective fact of complete worthlessness was certainly not established before April 14, 1934, when the first auction sale demonstrated the absence of market value of the company's assets.

The nonoccurrence of any significant event between January 1 and June 20 of the taxable year, advanced by the respondent in support of his position, seems to have no significance other than to show that no "identifiable event" fixing the loss took place until the latter date.

The identifiable event that evidences a loss in a manner sufficiently definitive for tax purposes is not necessarily the appointment of a receiver. *John H. Watson, Jr.*, 38 B. T. A. 1026; *George H. Horning*, 35 B. T. A. 897; *Lyon v. United States*, 5 Fed. Supp. 138. Respondent, moreover, does not contend that the stock of the Orchard Co. became worthless in 1932, the year of the receivers' appointment. The fact of losses in earnings alone is likewise not crucial, if there are possibilities of future recoupment. *John W. Burdan et al., Executors*, 37 B. T. A. 642 (on appeal C. C. A., 3d Cir.); *Gowen v. Commissioner*, 65 Fed. (2d) 923; certiorari denied, 290 U. S. 687.

A receivers' sale, however, destroying as it does all possibilities of corporate recovery, is an event which sufficiently demonstrates the loss on or worthlessness of stock. *Burnet v. Imperial Elevator Co.*, 66 Fed. (2d) 643; *American Utilization Co.*, 38 B. T. A. 322; *Olds & Whipple, Inc. v. Commissioner*, 75 Fed. (2d) 272. We conclude that petitioner's loss on his Orchard Co. stock was sustained in 1934 and on this issue decision will be for the petitioner.

### *Third Issue.*

The third issue concerns only the petitioner Frank C. Foreman. We are asked to determine whether respondent correctly applied the "first in, first out" rule to the exchange of petitioner's Berkeley Woolen Co. preferred stock for cash and debentures in the 1934 recapitalization. On November 1, 1934, the date of the exchange, this petitioner owned 550 shares of the preferred stock of the company. He had acquired 500 shares thereof on July 1, 1924, at a cost of $33⅓ per share and had purchased 50 additional shares on May

22, 1933, at a cost of $105 per share. In the exchange he surrendered simultaneously 330 shares for $34,650 in cash and 220 shares for debenture bonds having a fair market value of $23,100. There was no designation, either by the petitioner or the company, of the particular stock which was surrendered for cash or of the particular stock which was surrendered for debentures.

Respondent, pursuant to his theory that the money received was a distribution in partial liquidation, applied a basis of $33⅓ per share to the 330 shares surrendered for cash, considering the first 330 shares acquired to have been the 330 sold for cash. See Regulations 86, art. 22 (a)-8. Petitioner contends that it is unfair so to allocate the cost, assuming respondent's theory on the first point to be correct, and that it is arbitrary and erroneous to treat the 50 high-cost shares as having been exchanged for debentures. Instead he seeks to divide the 50 shares between cash and debentures in the same proportion as the entire lot of 550 shares was divided, i. e., to consider that 30 shares were exchanged for cash at a cost of $105 and 20 were exchanged for debentures.

There is no occasion here to apply the first in, first out rule or to separate the transactions for purposes of computing gain. *R. D. Walker, supra.*

In our opinion on the first issue, we have pointed out that all of the gain realized under section 111 and recognized under section 112 is taxable to each petitioner. The total cost of this petitioner's stock was $21,916.67. In the exchange he received debenture bonds having a then fair market value of $23,100 and $34,650 in cash. The gain, thus realized, is the total of these amounts less the aggregate cost of the stock, or $35,933.33. *Williams* v. *Commissioner,* 44 Fed. (2d) 467. But this gain is recognized only to the extent of the cash received, or $34,650. Sec. 112 (c) (1), Revenue Act of 1934. This total recognized gain is taxable. Sec. 115 (c), Revenue Act of 1934.

Effect will be given to the decision on this issue under Rule 50.

### Fourth Issue.

The last question also pertains to only one of the petitioners, namely, Gertrude A. McCormac, trustee for H. B. McCormac, Jr. Part of the consideration received by her upon the surrender of preferred stock of the Berkeley Woolen Co. consisted of a note. She takes the position that this note falls within the meaning of the term "securities" as used in section 112 (b) (3) of the Revenue Act of 1934. Respondent has determined that such note was the equivalent of cash.

At the time of the recapitalization exchange on November 1, 1934, this petitioner owned, apparently as trustee, 550 shares of the pre-

ferred stock of the Berkeley Woolen Co. Pursuant to the plan, she exchanged 220 shares for debenture bonds in the face amount of $23,100 and surrendered 330 shares for $17,350 in cash and a note for $17,300. Respondent has included the face amount of the note in his computation of her cash gain.

The record is barren of any details concerning this note. We are not informed as to its form or terms nor even as to whether it was secured by company assets. There is therefore no basis for determining whether it gave petitioner enough of a continuing interest in the company to raise the note to the dignity of a "security" as that word is used in section 112 (b) (3). On the authority of *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599; and *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214, decision on this issue will be for respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*