## COCA-COLA BOTTLING CO. OF GREEN-VILLE v. UNITED STATES.

### No. 10914.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1944.

Ernest Kellner and Robert T. Love, both of Greenville, Miss., for appellant.

Joseph M. Jones and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Toxey Hall, U. S. Atty., and A. Y. Harper, Asst. U. S. Atty., both of Jackson, Miss., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

This appeal involves the recovery of $9,018.63 additional corporation surtaxes on undistributed income, plus interest, for the calendar year 1937. The District Court denied the relief sought and dismissed the bill of complaint.

The question for decision is: Was the secretary-treasurer of the corporation paid a preferential dividend on his stock within the meaning of Section 27(g) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 838?

The facts were stipulated: The taxpayer, a Mississippi corporation, engaged in bottling and distributing Coca-Cola, was incorporated April 20, 1910, with capital stock of $5,000 divided into 100 shares of the par value of $50 per share. J. C. Pidgeon, president, owned sixty shares and H. C. Spence, secretary-treasurer, owned forty shares. In the taxable year 1937 J. Q. Strange was secretary-treasurer. Messrs. Pidgeon and Strange have both died since the taxable year in question.

Article 2, Section 2, of the by-laws of the taxpayer corporation, which were adopted in 1910, at the time of the organization of the corporation provides: "By agreement the president shall own sixty (60) shares of stock, and the secretary and treasurer shall own forty (40) shares of stock, regardless of the amounts subscribed, the two agreeing to subscribe each one-half the total amount of said capital, however, at such times as dividends may be declared, one-sixth of the dividends paid the president shall be paid to the secretary and treasurer, in order that the dividends may be equally divided between the two; but it is expressly stipulated that the president shall not be liable to the secretary and treasurer for any dividend or any part thereof unless the same is actually paid to or received by the president."

During 1937 dividends in the amount of $40,000 were paid, 50 per cent to each of the two stockholders. In addition to the $40,000, dividend credit claimed by taxpayer as a deduction in the computation of sur-

tax on undistributed profits, there was also deducted as a carryover dividends from the preceding year, the sum of $3,580.89 resulting in a total claimed dividend credit of $43,580.89.

In order to invoke the jurisdiction of the court below, the taxpayer limited its prayer for recovery to the total amount of $10,000.

The court below found the issue for the Government under Section 27(g) of the Revenue Act of 1936, which provides: "No dividends paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class."

The by-laws of the corporation were written at the time of its organization and long before the advent of the tax law. Taxes on future dividends were certainly not in the minds of the organizers at that time. J. C. Pidgeon and H. C. Spence organized the corporation. Of the $5,000 paid in for capital stock each paid $2,500. Only 100 shares of stock at par value of $50 per share were ever issued. Pidgeon, as president, received for his $2,500, sixty shares of stock. Spence, as secretary-treasurer, received for his $2,500, forty shares. They agreed that in the event of dividends being earned for the corporation that the president would take one-sixth from his dividends and pay over to the secretary-treasurer such amount, making the dividends equal. A careful reading of the by-laws will disclose that the section here quoted is not a by-law at all but a writing into the permanent record of the corporation an agreement which had been made between the president and secretary-treasurer. It stood as an authority to the corporation to act according to the agreement unless or until the parties should change it.

We do not know the reason or consideration for the agreement, but the effect of it was not at all to change the character of the stock each held and make two classes of stock, nor did it alter the regular declaration of an equal dividend to each share of the stock. It simply provided a disposition to be made of one-sixth of the president's dividends after they were declared. The president could, if he had chosen, have paid all his dividends to the secretary-treasurer, or to any one else. It is, therefore, patent that the corporation did not make an unequal distribution to its stockholders, but that so far as it was concerned it distributed

to each share of stock an equal amount. It paid over part of what the president was to receive to some one else on his instruction.

The facts in this case certainly set it apart from the cases of White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. Dupont, 308 U. S. 488, 60 S.Ct. 363, 84 L.Ed. 416; May Hosiery Mills v. Commissioner, 4 Cir., 123 F.2d 858; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29.

The judgment is reversed and the cause remanded where judgment will be entered for appellant in a sum not to exceed $10,000.

Reversed and remanded with instructions.