Ned Fuller and Ethel R. Fuller, Husband and Wife v. Commissioner.
Fuller v. Commissioner
Docket No. 20246.
United States Tax Court
1949 Tax Ct. Memo LEXIS 61; 8 T.C.M. (CCH) 889; T.C.M. (RIA) 49244; September 30, 1949
*61 Held, no deduction is allowable for alimony payments made by petitioner to his former wife under sections 22 (k) and 23 (u), I.R.C. Held further, a nunc pro tunc order by a State court, amending previous order of the court, is not effective to make deductible payments made in former years. Larry S. Davidow, Esq., 3210 Book Tower, Detroit 26, Mich., for the petitioners. Thomas V. Lefevre, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax for the years 1944 and 1945 in the respective amounts of $1,216.02 and $2,475.04. The question is whether deduction is allowable for certain alsmony payments made by Ned Fuller to his former wife, Mary Cleo Fuller, during the taxable years. Findings of Fact Petitioner Ned Fuller, during the taxable years 1944 and 1945, was a resident of Dearborn, Michigan, employed as Auditor of Disbursements by the Ford Motor Company. He filed his Federal income tax return for the taxable year ended December 31, 1944, with the collector of internal revenue for the district of Michigan, on March 13, 1945. Petitioner Ethel R. Fuller, *62 who is the present wife of petitioner Ned Fuller, during the taxable year 1945 was a resident of Dearborn, Michigan. Petitioners filed their joint Federal income tax return for the taxable year ended December 31, 1945, with the collector of internal revenue for the district of Michigan, on March 13, 1946. On October 31, 1944, petitioner Ned Fuller entered into a property settlement agreement with his then wife, Mary Cleo Fuller, paragraph III of which contains a provision for payments by him for her support and maintenance, as follows: "The party of the first part [Ned Fuller] further agrees to pay to the party of the second part [Mary Cleo Fuller] the sum of Twenty-seven Thousand ($27,000.00) Dollars, within ten (10) years from and after the 8th day of November, A.D., 1944, in equal monthly installments of Two Hundred and Twenty-Five ($225.00) Dollars each, payable upon the 8th day of November, A.D., 1944, and upon the 8th day of each and every month thereafter, for her support and maintenance, until the said principal sum of Twenty-seven Thousand ($27,000.00) Dollars is paid to the party of the second part; it being expressly understood and agreed between the parties hereto *63 that the obligation of the party of the first part to pay said sum of Twenty-seven Thousand ($27,000.00) Dollars, as herein provided, shall survive his death and shall be binding upon his estate." On November 1, 1944, the Circuit Court for the County of Oakland, State of Michigan, entered a decree of divorce of petitioner Ned Fuller and Mary Cleo Fuller, which incorporated by reference the property settlement agreement of October 31, 1944. In compliance with such decree, Ned Fuller made support payments to Mary Cleo Fuller in the sum of $450 in 1944 and $2,700 in 1945. Ned Fuller took a deduction on his Federal income tax return for 1944 for the payments made in 1944 and petitioners took a deduction on their joint return for 1945 for those made in 1945. Mary Cleo Fuller declared the 1945 payments as income on her Federal income tax return for 1945 and paid income tax thereon. Upon learning early in 1947 that respondent questioned the deductibility of the payments made to Mary Cleo Fuller under the terms of the decree of November 1, 1944, petitioners, through their attorneys, enlisted the cooperation of Mary Cleo Fuller and her attorney to alter the terms of the decree so as *64 to render the payments deductible by petitioners. On May 5, 1947, petitioner Ned Fuller and Mary Cleo Fuller entered into a stipulation amending the property settlement agreement of October 31, 1944, and authorizing modification of the decree of November 1, 1944, incorporating it, so as to make paragraph III of said property settlement read as follows: "The party of the first part [Ned Fuller] further agrees to pay to the party of the second part [Mary Cleo Fuller] the sum of twenty-seven thousand dollars ($27,000.00) within eleven (11) years in monthly installments as follows: '(a) Two hundred twenty-five dollars ($225.00) on the 8th day of November, A.D., 1944, and a like sum on the 8th day of each month thereafter up to and including the 8th day of February, A.D., 1953; a total of one hundred (100) payments at two hundred twenty-five dollars ($225.00) each - $22,500.00. '(b) One hundred eighty dollars ($180.00) on the 8th day of March, A.D., 1953, and a like sum on the 8th day of each month thereafter up to and including the 8th day of March, A.D., 1955; - a total of twenty-five (25) payments at one hundred eighty dollars ($180.00) each - $4,500.00. 'for her support *65 and maintenance until the principal sum of twenty-seven thousand dollars ($27,000.00) is paid to the party of the second part; it being expressly understood and agreed between the parties hereto that the obligation of the party of the party of the first part to pay said sum of twenty-seven thousand dollars ($27,000.00) as herein provided shall survive his death and shall be binding upon his estate.'" The Circuit Court for the County of Oakland entered an order on May 14, 1947 amending the property settlement agreement of October 31, 1944, incorporated in the decree of November 1, 1944 so as to make paragraph III of said property settlement read in accordance with the stipulation of May 5, 1947. Pursuant to a further stipulation entered into by Davidow & Davidow, attorneys for Ned Fuller, and Thomas F. Chawke, attorney for Mary Cleo Fuller, the Circuit Court for the County of Oakland entered an order on September 9, 1947 amending the order of May 14, 1947 to declare that the amendment to paragraph III of the property settlement agreement be considered nunc pro tunc as of the date of the property settlement agreement and the original decree. The respondent disallowed the deductions *66 for the taxable years and determined the deficiencies accordingly. Opinion VAN FOSSAN, Judge: On brief petitioners pose four questions. They are: 1. Where the taxpayer makes payments of alimony in pursuance of a property settlement agreement which was supposed to be drafted in accordance with the agreement between the parties that the husband would be able to deduct such payments from his gross income, are such payments deductible from his gross income? [1]
2. Where the undisputed testimony shows that the husband agreed to pay $25 per month more for the express purpose of the wife's paying income tax on alimony payments, and wife does pay income tax, should the petitioners have the protection of the law and be permitted to deduct the alimony payments from their gross income? 3. Where the written agreement was drafted under the belief of the scrivener that it complied with the provisions of the Income Tax Law and regulations to permit taxpayer to have the benefit of deducting payments of alimony, may such written agreement be amended to conform to the understanding between the parties after an adverse interpretation *67 of said contract by respondent? 4. May such amendment be made effective nunc pro tunc by the Court signing the original decree of divorce, which accepted the settlement agreement of the parties? Addressing ourselves to the questions raised by petitioners, it is to be observed that deductions are a matter of legislative grace and "only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435. The burden is on the taxpayer claiming deduction to show that "the deduction clearly falls within some deduction provision of the taxing act." White v. United States, 305 U.S. 281. The statute governing the deductions in the present case is specific and to authorize a deduction a taxpayer must comply precisely with it. The fact that the evidence may be that the husband added $25 per month to the amount payable to his wife on divorce to cover taxes and that the wife actually has paid the tax, gives the petitioners no special rights. The Tax Court of the United States is a statutory Court without general equity powers or jurisdiction. Likewise, the fact that the written agreement was drafted *68 under the belief of the scrivener (a lawyer) that it would permit taxpayer to have deductions of alimony and was later amended to conform to such understanding, does not give retroactive effect to the agreement by the husband to pay alimony nor does it retroactively entitle the husband to deductions in years already past. Thus it is that petitioner's attempt to conform to the statute by a nunc pro tunc order of the Court is wholly ineffective so far as past years is concerned. All of these matters have been fully discussed in the decided cases. See Robert L. Daine, 9 T.C. 47, affirmed (CCA-2) 168 Fed. (2d) 449; Peter Van Vlaanderen, 10 T.C. 706. affirmed (CCA-3) 175 Fed. (2d) 389 (May 27, 1949); and Frank R. Casey, 12 T.C. 224. Decision will be entered for the respondent. Footnotes
1. Sections 22 (k) and 23 (u), I.R.C.↩