**LIGHT AGGREGATES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 876.**

United States District Court
D. South Dakota, W. D.

Dec. 21, 1963.

See publication Words and Phrases for other judicial constructions and definitions.

Bangs, McCullen, Butler & Foye, by George A. Bangs, Rapid City, S. D., for plaintiff.

Harold C. Doyle, U. S. Atty., and Travis Lewin, Asst. U. S. Atty., Sioux Falls, S. D., for defendant.

BECK, District Judge.

Light Aggregates, Inc., Rapid City, South Dakota, (taxpayer) raises two questions, one grounded on the claim that its $27,000 in debentures, worthless in fiscal 1960, should have been treated as an ordinary loss, and not as the Director of Internal Revenue (Director) concluded, a capital loss against taxable income, and the other, that depletion costs on mined shale, Int.Rev.Code of 1954, Secs. 611(a), 613(a), (b) (5) (A), (c) (1) (2) (4) (C) (D) includes, extracting from the mine, transporting less than fifty miles, reducing to a required size, unloading on to stock pile, transferring into a rotary kiln, subjecting to heat which at its maximum requires 1,800 to 2,000 degrees fahrenheit, natural cooling, crushing and screening to marketable specifications and loading for shipment.

From the evidence relating to the debenture loss and the admissions in the course of the oral arguments and in the written briefs the court finds: (1) that the taxpayer is a South Dakota Corporation; (2) that its principal place of business and plant for processing light weight aggregates and sale thereof is in Rapid City, South Dakota; (3) that its market for its product by 1957 was extensive, built, in part, as it had been on thousands of tests conducted by a former owner throughout North America in search for bloating shale and the demand in the market for the use of that mineral in the production of light weight aggregates; (4) that taxpayer in 1957 joined another, The Ochs Brick and Tile Company of Springfield, Minnesota, in a venture, to gain control of Acolite, Inc., then engaged at Springfield in processing and sale of light aggregates; (5) that the two participants in the process did get such control, as-

surances as to continuity thereof for a period of fifteen years and ownership of the common stock on an evenly divided or a fifty percent basis; and (6) that the taxpayer thereafter in its fiscal 1960 ended that venture at a loss on which its investment in Acolite 6% registered debentures, admittedly, under this record, amounted to $27,000.

Applicable provisions of the Internal Revenue Code of 1954, as they are brought to bear on those facts, shows "a * * * debenture * * * issued by a corporation * * * in registered form" to be a "security", Sec. 165(g) (2), which for deduction for income tax purposes, will be treated as a capital loss, Sec. 165(g), providing they are not in an "affiliated" corporation, Sec. 165 (g) (3).

■ The Director, having computed the debenture loss on that basis, it is prima facie correct and the burden then, is on the taxpayer to prove the computation not only to have been erroneous but also to show facts from which a correct determination can be made. Vol. 10 Mertens, Law of Federal Income Taxation, Sec. 58A.01, 58A.35 (Zimet rev.), New Colonial Ice Company v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172, and Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184.

■ Neither of those requirements were met. Not only is there failure in the taxpayer's proof that *it directly owned at least 95 percent* of the Acolite stock and like omission to carry the burden

under Sec. 165(g) (3) (B) [1], but also conclusive affirmative evidence that the ownership of stock under the trust agreement could not exceed 50 percent.

Moreover, there is no substantiating proof whatsoever to show the loss to have been one controlled by the "Tie-in Purchases" doctrine, Vol. 3B Mertens, Law of Federal Income Taxation Sec. 22.-16 (Zimet & Weiss rev.), relied on by the taxpayer as it invokes Smith & Welton v. United States, 164 F.Supp. 605 (E.D. Va.1958) and Electrical Fittings Corp. v. Commissioner, 33 T.C. 1026 (1960).

■ The taxpayer's relating of the history of the debenture loss, in its supplemental brief, how it was sustained and why, can not be used as a substitute for positive proof at the trial, or as a basis for favorable inferences, where as here, such recitals are not admitted, specifically refuted in the Director's answering brief and therein assailed under the rule in Vol. 10 Mertens, Sec. 58A.01, supra.

Aside from the evidence which sustains the findings hereinbefore made, there is like basis for those having more direct bearing on what costs may be included in computing depletion for income tax purposes in mined shale. These are as follows: (1) that the taxpayer in the production of its light weight aggregates uses clay and shale (terms substantially having reference to the same material) extracted from its own mine, located at a distance of twelve miles or thereabouts from the taxpayer's plant; (2) that such clay or shale is a special variety with inherent elements causing it to bloat and

---

1. That subsection with the last paragraph thereof not being material and for that reason omitted, is as follows:
   "(3) Securities in affiliated corporation.— For purposes of paragraph (1), any security in a corporation affiliated with a taxpayer which is a domestic corporation shall not be treated as a capital asset. For purposes of the preceding sentence, a corporation shall be treated as affiliated with the taxpayer only if—
   "(A) at least 95 percent of each class of its stock is owned directly by the taxpayer, and

"(B) more than 90 percent of the aggregate of its gross receipts for all taxable years has been from sources other than royalties, rents (except rents derived from rental from properties to employees of the corporation in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, and gains from sales or exchanges of stocks and securities".

to expand upon being subjected to high temperatures; (3) that there is no market for it at Rapid City or at any other place within the State of South Dakota or at any other of the taxpayer's markets for its product, except insofar as it is used at the taxpayer's plant; (4) that it is subjected to no other process except heating as it passes through taxpayer's rotary kiln and thereafter, cooling and screening, only, as it is brought to shipping grade and form and loading for shipment; and (5) that the kiln process is one normally applied by mine owners of clay or shale to obtain a commercially marketable product without which, even as to a user, in this case the taxpayer, it had no value whatsoever.

The Internal Revenue Code of 1954, Sec. 611(a) states the general rule in allowance of deductions for depletion, " * * * in the case of mines * * * there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, *according to the peculiar conditions in each case;* such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. * * * ". (Emphasis supplied).

The basis for the cost depletion is in Section 612[2]. The percentage to be allowed on gross income from property in case of mines and in that connection "shale" is 5 percent, Sec. 613(a), (b) (5) (A). "Gross income from the property" under those provisions means "gross income from mining", Sec. 613(c) (1) and "mining" under (2) of (c) of the same section " * * * includes not merely the extraction of the ores or minerals from the ground but also the ordinary treatment process normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products, * * *".

■ One engaged in extraction of bloatable clay or shale from the ground and in the use thereof to the point of making it commercially marketable, is entitled to all costs which accrue in conjunction therewith for purpose of depletion allowances, providing the hauling of the ore, except as otherwise specifically authorized, is limited to fifty miles and the treatment thereof, under the *"peculiar conditions in each case"* is such as to be within the *"ordinary treatment processes normally applied"* by those engaged in the field to attain that objective, 611 (a) and 613(c) (2). (Emphasis supplied).

■ But in the application of that formula, it is to be noted, that the controversy resolves itself into one question, whether the rotary kiln process, under all of the facts and circumstances was within the boundaries of "ordinary treatment" referred to in Section 613(c) (2), since there is no dispute on the point that the end result was a "commercially marketable" product.

The answer to this question is in the conclusion based on the finding, that the taxpayer in making adjustment to the particular facts existing at its location, including the need for a process by which the bloating elements in the ore could be ascertained, had some discretion—some choice—in the selection and that it rightfully exercised those grants as it decided on the rotary kiln process.

The theory permitting that conclusion, is implicit in the general terms "ordinary treatment processes normally applied by mine owners and operators" and in the terms of Section 613(c) (4) (C) (D) which includes certain processes without excluding others. It is explicit in the language of Section 611(a) that the deduction for depletion shall be "according to the peculiar conditions in each case" and further support for the theory is in the language used by the court in Book-

---

2. "Basis for cost depletion—Except as otherwise provided in this subchapter, the basis on which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 208."

walter v. Centropolis Crusher Company, 305 F.2d 27 (8 Cir. 1962) after comments on the decision in United States v. Cannelton Sewer Pipe Company, 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581 that:

> "The court in no way attempted to set out or define what these ordinary processes might be among the several minerals, and it seems obvious that under the language of the 1939 Code, determination of what constitutes the 'commercially marketable product,' and 'ordinary treatment processes' *in a given situation depends upon the facts at hand.*" (Emphasis supplied)

See also Dragon Cement Company v. United States, 244 F.2d 513 (1 Cir. 1957), where it was said:

> "It is apparent that the Congress intended not to limit the computation of the precentage depletion allowance to the gross income attributable to purely extractive. processes, for the deposit when thus first extracted might not be in a commercially marketable form, and might require further processing. Congress accomplished this by providing for the first time a general formula, and by giving nonexclusive illustrations of processes included in the phrase 'ordinary treatment processes'."

One other conclusion is permitted: that the taxpayer—experienced, skillful, successful and operationally large—in making its own selection as to process, thereby supplied the only needed basis to show it to have been within the boundaries of the "ordinary treatments" which are referred to in Section 613(c) (2).

This decision is to be regarded as the court's findings of fact and conclusions of law in the case and counsel for the plaintiff forthwith will prepare a form Judgment carrying this decision into effect and thereafter cause the same to be submitted to the court for approval and entry.