T.C. Memo. 1999-44


UNITED STATES TAX COURT


LARRY J. AND ANGELA L. SIGGELKOW, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2550-97.                    Filed February 10, 1999.


R. Glen Woods, for petitioners.

Wendy S. Harris, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a deficiency in
petitioners' 1992 Federal income tax in the amount of $24,993.
The issue for our consideration is whether petitioners are
entitled to take an ordinary loss deduction for a business bad
debt as allowed by section 166.[1]  Petitioners contend that, in

---

[1] Unless otherwise stated, all section references are to the
Internal Revenue Code in effect for the taxable year in issue,
and all Rule references are to the Tax Court Rules of Practice
                                        (continued...)

the ordinary course of Mr. Siggelkow's business, he made a bona fide loan to a company he partially owned that became a worthless business debt in 1992 when the company went out of business. Respondent disputes that the advance of funds was made in the course of petitioner's trade or business.

## FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Larry and Angela Siggelkow, husband and wife, resided in Las Vegas, Nevada, at the time their petition was filed. Angela Siggelkow is a petitioner in this case because she joined in filing returns with Larry Siggelkow. Subsequent references to "petitioner" refer only to Larry Siggelkow.

During the tax year in question, petitioner owned one-third of the stock in PLG Enterprises, Inc., d.b.a. Eagle Jet Charter, Inc. (PLG), and all of the stock in Lang Aire, Inc. (Lang), as well as interests in other aviation-related companies.

In May 1992, petitioner borrowed $255,000 from Clark County Credit Union (CCCU) against funds held in his personal accounts at CCCU. The CCCU loan agreement specified a 5.75-percent interest rate with a single balloon payment due in June 1993. Petitioner instructed the credit union to wire the funds directly to AIG Aviation Insurance Services, Inc. (AIG), on behalf of PLG as payment for its successful bid to buy a salvaged Lear jet held

[1](...continued)
and Procedure.

by AIG. The plane, formerly owned by the singer Paul Anka, had suffered extensive damage after running off a runway and was no longer certifiable for flight. PLG took possession of the salvaged plane, planning to remove the plane's undamaged engines to sell to Lang, which owned a plane in need of engines before it could be sold. Petitioner did not take the plane or any other asset of PLG as collateral for the funds he advanced on PLG's behalf, failing to file a notice of lien or make a UCC filing in order to secure his position as a creditor. Petitioner also failed to keep any documentation on the alleged loan in his personal records and was unable to produce documentation evidencing a loan between petitioner and PLG for the funds advanced, though he claimed the note was held by another PLG shareholder, Craig Orrock. No shareholder loans were reported on PLG's 1992 tax return.

Lang purchased the engines in 1992 from PLG for $163,074.42, which was sent directly to CCCU in partial repayment of petitioner's personal note. One hundred fifty-five thousand dollars was applied to principal and $8,074.42 was applied to interest on the CCCU note. Thereafter PLG made no payments to petitioner or on the CCCU note. Petitioner never made any attempt to collect those funds he claimed were still owed to him by PLG. Subsequently, petitioner paid off the remaining $100,000 CCCU loan balance.

In the fall of 1992, petitioner entered into negotiations with Yamagada Enterprises d.b.a. Eagle International Group (Eagle

Group) for the purchase of petitioner's aviation-related businesses as well as various assets held by petitioner, petitioner's wife, petitioner's companies, and the two other PLG shareholders, Craig Orrock and William Acor, a close friend of petitioner's. Petitioner and Mr. Acor retained interests in the new company, Eagle Group, once the sale was completed. Included in the businesses bought by Eagle Group were Lang and PLG. The sale was negotiated for approximately $5 million. Petitioner was to receive $2,410,050, paid in cash and in installments from Eagle Group with additional periodic payments to petitioner and Mr. Acor totaling more than $500,000. Eagle Group also agreed to assume $637,929.98 in liabilities held by the various companies sold in the deal. This did not include the remaining $100,000 petitioner claims PLG owed him.

Out of the total purchase price, petitioner allotted $177,500 for the sale of PLG. The sum was divided so that $176,500 was for goodwill, and the remaining $1,000 was for the assets of PLG, including the rest of the salvaged plane. Those assets were sold for below fair market value. PLG never received the funds; instead, petitioner accepted the payment directly. Though Eagle Group agreed to assume the notes held by other businesses sold in the deal, petitioner did not try to convince Eagle Group to assume the alleged liability owed to petitioner by PLG for the outstanding $100,000 balance, nor did he structure the disbursement among his companies so that PLG had enough money to pay off its creditors, including petitioner. The liabilities

owed to PLG's outside creditors were paid in full, but no funds were made available to repay petitioner.

Petitioner claimed that PLG's failure to pay him the remaining money resulted in a bad business debt. On his 1992 tax return, he claimed a deduction of $78,271. He later claimed that this amount should have been $100,000. He had claimed the lower amount on the advice of his tax preparer. Respondent determined a $24,993 deficiency by disallowing petitioner's claimed ordinary loss for a bad business debt under section 166. Computational adjustments were also made due solely to the increase in petitioner's adjusted gross income.

## OPINION

We must decide whether petitioner is entitled to a business bad debt deduction for the advances made on PLG's behalf. Respondent argues that petitioner is not entitled to the deduction because the advance did not constitute a business loan. On brief, respondent also argued that the advance was not a bona fide loan and that it did not become worthless as petitioner claimed. However, in the notice of deficiency, respondent already conceded that the advance was a nonbusiness bad debt, which petitioner could deduct as a short-term capital loss rather than as the ordinary loss claimed for 1992, and calculated petitioner's tax deficiency accordingly.

In order to maintain an ordinary loss, petitioner must demonstrate that the loan qualifies for section 166 treatment. White v. United States, 305 U.S. 281 (1938); United States v.

Virgin, 230 F.2d 880 (5th Cir. 1956). Section 166(d)(1)(A) provides that in the case of a taxpayer other than a corporation, section 166(a) shall not apply to any nonbusiness debt. Section 166(d)(2) defines a nonbusiness debt as "a debt other than--(A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Whether a debt is a business debt or a nonbusiness debt is a question of fact in each particular case. Sec. 1.166-5(b), Income Tax Regs. In this regard, a debt must be proximately related to the taxpayer's conduct of a trade or business in order to constitute a business debt. United States v. Generes, 405 U.S. 93 (1972); sec. 1.166-5(a)(2), Income Tax Regs. Whether a debt bears a proximate relation to a taxpayer's trade or business is determined by the dominant motivation of the taxpayer in incurring the debt. United States v. Generes, supra at 103. A significant motivation is not sufficient. Id. If an employee's dominant motivation in making a loan to his employer is a desire to preserve his position and salary at that company, the loan may be a business loan. See Shinefeld v. Commissioner, 65 T.C. 1092 (1976). However, petitioner here has not demonstrated that the loan was "necessary to keep his job or was otherwise proximately related to maintaining his trade or business as an employee." Whipple v. Commissioner, 373 U.S. 193, 204 (1963). Petitioner held a salaried position in a separate company, not threatened by

the failure of PLG, and took no salary for his position with PLG. See United States v. Generes, supra at 103 (considering the ratio of salary to debt amount a significant factor to find business purpose for an employee loan).

A taxpayer may claim a business loss in situations in which the taxpayer's activities in making loans have been regarded as so extensive and continuous as to elevate that activity to the status of a separate business. Rollins v. Commissioner, 32 T.C. 604, 613 (1959), affd. 276 F.2d 368 (4th Cir. 1960); Barish v. Commissioner, 31 T.C. 1280, 1286 (1959); Estate of Palmer v. Commissioner, 17 T.C. 702 (1951). Yet, petitioner presented no evidence that his activity in that respect was extensive enough to constitute a separate business. We also find it significant that petitioner did not charge enough interest to create any lender profit margin and maintained no documentation on the advance he made.

Having considered the record herein in light of the above criteria, we conclude that petitioner did not make the advance to PLG in furtherance of his trade or business; he was not in the business of lending money, nor did he make the advance in order to preserve a salary from PLG. Petitioner is not entitled to a business bad debt deduction under section 166.

In light of the foregoing,

Decision will be entered for respondent.