ANNE FRANK, PLAINTIFF-RESPONDENT, v. FRANK'S INC., A CORPORATION, MICHAEL FRANK AND JOSEPH FRANK, JR., DEFENDANTS-APPELLANTS.

Argued March 17, 1952—Decided March 31, 1952.

*Mr. John J. Gaffey* argued the cause for the appellants (*Messrs. Minard, Cooper, Gaffey & Webb,* attorneys).

*Mr. Samuel Roessler* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. From a judgment of the Chancery Division of the Superior Court holding that the tavern and apartment at 1371 Springfield Avenue, Irvington, standing in the name of the defendant corporation are subject to the plaintiff's consummate right of dower, the defendants appealed to the Appellate Division of the Superior Court. We certified the appeal on our own motion.

The premises in question were acquired by Joseph Frank, Sr., on December 1, 1926, subject to a mortgage then held by the Perfection Building and Loan Association. In March, 1934, he had an automobile accident which led to the institution of suit against him on August 10, 1934, by Conrad Mahr. On December 15, 1934, Frank formed a corporation known as Joe's Hill Top Tavern, Inc., the stated purposes of which were to engage in the tavern business and to acquire real estate. To it Frank transferred the stock and fixtures of the tavern which he had been conducting on the premises in question and an old automobile in return for seven shares of stock of the corporation. The other incorporators were his son, Anthony Frank, who received one share, and one John Lieb, who held five shares of stock in the corporation. On May 23, 1935, Mahr obtained a judgment against Frank for $6,000, and in October of that year Frank filed a voluntary petition in bankruptcy. In due course he was adjudicated a bankrupt. Among the creditors he listed were Mahr and the building and loan association. In 1936 the building and loan association started foreclosure proceedings against Frank and bid in the mortgaged property at the foreclosure sale. On March 31, 1937, the building and loan association and Joe's Hill Top Tavern, Inc., entered into a contract whereby the building and loan association agreed to sell and Joe's Hill Top Tavern, Inc., agreed to buy the premises in

question for $24,949.81. On April 23, 1937, Frank was discharged in bankruptcy. Frank's marriage to the plaintiff did not take place until September 14, 1938.

On October 4, 1938, $4,949.81 having been paid on account of the contract price pursuant to the terms of the contract, the building and loan association delivered its deed to the premises to Joe's Hill Top Tavern, Inc., simultaneously with the execution and delivery to the building and loan association of a purchase money bond and mortgage for $20.000 executed by the corporation and the individual stockholders. Prior to the delivery of the deed Frank, having acquired all of the outstanding stock of the corporation, transferred one share each to his son, Anthony Frank (now known as Joseph Frank, Jr.), his son Michael Frank and his son-in-law Edward Becker to enable them to qualify as directors. The license to operate the tavern business had always been in the name of Joseph Frank and was owned by him individually until his death in 1950, when it was transferred to the corporation.

In February, 1950, Frank was disabled by a heart attack. He thereupon entered into a contract with his two sons whereby in consideration of his giving them full control of the tavern business and of their assuming all of its obligations and agreeing to support him for the rest of his life, he transferred his stock to them and resigned from the corporation. At this time the name of the corporation was changed to Frank's Inc. The actual transfer of the shares of stock to the sons, however, did not take place until August, 1950, after a judgment had been entered in the Chancery Division of the Superior Court in an action brought by the plaintiff for separate maintenance and after it had been affirmed on appeal, *Frank v. Frank,* 10 *N. J. Super.* 73 *(App. Div.,* 1950). The judgment held that Frank had neither abandoned nor separated himself from his wife nor refused or neglected to support her.

Frank died on November 24, 1950. Thereafter the plaintiff brought this action seeking a judgment declaring the

existence of a right of dower in the premises owned by the defendant corporation. The first question litigated in the trial court was whether the plaintiff was in fact the widow of the decedent, the plaintiff before her marriage to the decedent having been the common-law wife of one Albert Minichella, from whom it was believed she had never obtained a divorce. The trial court held that the unexplained absence of Minichella for over ten years prior to her marriage to the decedent led to the presumption of Minichella's death and that therefore the plaintiff's subsequent marriage to Frank was valid. This question as to the plaintiff's status as the decedent's widow has been rendered moot on this appeal because of the fact that following the entry of judgment in the trial court it was discovered that the plaintiff had been divorced from Minichella in 1934 in an action brought by him against her on the grounds of desertion.

The sole question now remaining on this appeal is whether or not the decedent as the plaintiff's husband or another to his use was seized of an estate of inheritance at any time during coverture in the property in question, *R. S.* 3:37–1, *i. e.*, whether or not the premises in question owned by the defendant corporation are subject to a right of dower in the plaintiff. The trial court entertained doubts as to the plaintiff's right to recover, but believing itself bound by *Telis v. Telis*, 132 *N. J. Eq.* 25 (*E. & A.* 1942), it held that since the corporation was solely owned by Frank in the equitable sense the corporation was a fraudulent attempt on his part to deprive his wife of her right of dower in the property and that therefore the premises were subject to her right of dower.

The case at bar, however, is distinguishable on the facts from the *Telis* case in several significant respects. In the *Telis* case the wife asserted an inchoate right of dower in her husband's lifetime; here the widow seeks consummate dower after her husband's death in premises in which she never claimed an interest during his lifetime. Indeed, at one stage of her action for separate maintenance she had a receiver appointed to run the affairs of the corporation, but in that

proceeding she did not claim any dower right in its property. In the *Telis* case the wife brought her suit to establish her dower right after the court had awarded her support money for herself and her children from her husband; here two courts have determined that Frank had not deserted his wife or failed to support her. In the *Telis* case the husband formed the corporation after his marriage; here the corporation was formed a year and a half before the marriage and, so far as the record discloses, at a time when Frank did not even know the plaintiff. In the *Telis* case, the organization of the corporation had never been completed; the husband owned all the stock, shares purporting to have been delivered to other stockholders never in fact being delivered; no meetings of the corporation were ever had; and no by-laws were adopted. Here none of these factors are present. In the *Telis* case no rights of third parties were involved; here the two sons have acquired rights in return for their promise to support their father in his old age. Finally, in the *Telis* case the court found the transfer fraudulent "in the equitable sense" and accordingly pierced the veil of the corporate entity in order to prevent fraud; here the trial court found, and properly so, that the formation of the corporation was not for the purpose of defrauding the plaintiff of her dower, stating:

"If the action were found upon such a claim of fraud alone, there would have to be a judgment against the plaintiff."

It is the absence of fraud as to the plaintiff that most clearly distinguishes the case at bar from the *Telis* case.

█ In the circumstances of this case, there is no justification for attacking the corporate structure. To do so would not only unsettle the established business practice of using corporations for legitimate purposes but might also jeopardize the rights of creditors. Our courts are quick to grant relief when the corporate device is used to work fraud, as was done in the *Telis* case and in *Nemeth v. Nemeth*, 104 *N. J. Eq.* 603 (*Ch.* 1929), where a husband to defeat his

wife's inchoate right of dower fraudulently induced her to join in a conveyance of property to a corporation the stock of which was solely owned by him, but the facts here do not warrant a piercing of the corporate veil.

█ Fraud being absent, we must next inquire whether or not the property in which the plaintiff claims a dower right was held by Frank "or another to his use" within the meaning of that phrase as used in *R. S.* 3 :37–1, now *N. J. S.* 3A :35–1 :'

"The widow, whether alien or not, of a person dying intestate or otherwise, shall be endowed for the term of her natural life, of the full and equal half part of all real estate whereof her husband, *or another to his use,* was seized of an estate of inheritance at any time during coverture, to which she shall not have relinquished or released her right of dower by deed duly executed and acknowledged in the manner provided by law for deeds to be recorded."

Concededly this statute would have no application to land owned by a corporation in which a husband did not own all of the stock legally or beneficially. Should the statute apply, in the absence of fraud, when a husband owns all of the stock of a corporation? We think not. To so hold would be to ignore the basic concept of a corporation as an entity in the law separate and apart from the person or persons who own its stock. Obviously, the corporation does not hold the premises in question "to the use of" Frank directly, but for the use of the corporation itself as an artificial entity as much recognized by the law as any natural person. To be sure, a sole stockholder may invoke his power as stockholder under the corporation laws to dissolve the corporation and ultimately to become the owner of the real property the corporation owns. However, this power as a stockholder to cause the corporation to be dissolved must be exercised in accordance with statute and is subject to the rights of the State and of creditors. Until a stockholder so acts he is not the owner of the real property of the corporation and the corporation does not hold it to his use, but rather to its own use. A different conclusion would cause hardship to the

creditors of a corporation and confusion in the law of real property. One would never be safe in accepting title to real estate from a corporation which has or ever has had a single beneficial owner. Any such construction of the statute would add new perils to conveyancing and to the certifying and guaranteeing of titles to real property. To the extent that the *Telis* case be considered to hold otherwise and to ignore the corporate entity in the absence of fraud, it must be overruled.

The plaintiff stresses Frank's fraud in the formation of the corporation, but the fraud of Frank was not on the plaintiff but on his judgment creditor, Mahr, and he alone had the right to complain of it. That fraud, as the trial court properly found, gives the plaintiff no cause of action.

The judgment below is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For affirmance*—None.