FEDDERS FINANCIAL CORPORATION, PLAINTIFF-APPEL-
LANT, v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT-RESPONDENT.

Argued November 9, 1983—Decided June 4, 1984.

378

*Peter C. Aslanides* argued the cause for appellant (*McCarter & English*, attorneys; *Michael A. Guariglia,* on the brief).

*Harry Haushalter*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Kevin J. Coakley* submitted a brief on behalf of *amicus curiae* Hilton Hotels Corporation (*Connell, Foley & Geiser,* attorneys; *Patrick J. McAuley,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

This case requires us to interpret provisions of the New Jersey Corporation Business Tax Act (the Act). Under the Act the tax is measured by a corporation's net worth and net income. One provision in dispute made a corporation's "indebt-

edness owing directly or indirectly" to holders of 10% or more of the corporation's outstanding shares includible in the corporation's net worth. *N.J.S.A.* 54:10A–4(d). The other disputed provision stated that 90% of the amount paid in interest on such indebtedness may not be excluded in computing its net income. *N.J.S.A.* 54:10A–4(k)(2)(E). At issue is the meaning of the phrase "owing directly or indirectly" in the context of a corporation's debts owing to an affiliated (nonparent) company.

The Director of the New Jersey Division of Taxation, Department of the Treasury (the Director), determined that plaintiff Fedders Financial Corporation in computing its tax liability under the Act should have included, as part of its "net worth" pursuant to *N.J.S.A.* 54:10A–4(d) and –4(e), a debt owed to plaintiff's wholly owned subsidiary; should not have excluded, when calculating "net income" under *N.J.S.A.* 54:10A–4(d) and –4(e), a debt owed to plaintiff's wholly owned subsidiary; and should not have excluded, when calculating "net income" under *N.J.S.A.* 54:10A–4(k)(2)(E) and –4(e), 90% of the interest on this debt. The Director assessed deficiencies, including interest, that aggregated $587,483 for the taxpayer's fiscal years ending August 31, 1972, 1973, and 1974. The plaintiff taxpayer's appeal to the existing Division of Tax Appeals was transferred, in accordance with *N.J.S.A.* 2A:3A–26, to the Tax Court, which affirmed. 3 *N.J.Tax* 576 (1981). In an unpublished *per curiam* opinion the Appellate Division affirmed, substantially for the reasons given in the Tax Court's opinion. We granted plaintiff's petition for certification. 93 *N.J.* 267 (1983).

I

The facts were stipulated. Plaintiff, whose principal office is in New Jersey, is a wholly owned subsidiary of Fedders Corporation (Fedders). Plaintiff was formed in 1959 to finance the wholesale and retail commercial paper generated by the sale of air conditioners and other products manufactured by Fedders.

Plaintiff was originally capitalized with $2,000,000, of which $100,000 was ascribed to capital stock and $1,900,000 designated as capital surplus. The parent, Fedders, not only contributed the $2,000,000, but also loaned to the plaintiff an additional $3,000,000.

In 1972 plaintiff, needing additional funds, decided to tap foreign sources, commonly known as the Eurodollar market. Under the federal income tax law domestic corporations had to withhold federal income taxes from the interest paid to foreign lenders. *I.R.C.* §§ 1441, 1442 (1982). However, no withholding was required on interest paid to foreign lenders by a foreign corporation. Therefore, it was advantageous for domestic corporations to create foreign corporations that would borrow the necessary dollars from foreign investors who would then be more likely to invest in these enterprises.

The Netherlands Antilles frequently has been used as the country of incorporation of an offshore finance subsidiary. In addition to the Antilles corporation's avoiding the requirement of withholding under the United States federal tax laws, a tax treaty between the Netherlands and the United States eliminates the 30% United States withholding tax on United States corporate interest received by an Antilles corporation, provided the interest income is not "effectively connected" with a United States "permanent establishment." Income Tax Convention, Apr. 29, 1948, United States-Netherlands, art. VIII(1), (2), *reprinted in* 2 *Tax Treaties* (CCH) ¶ 5812. The United States corporation thus can pay interest to an Antilles corporation on money loaned to it by the Antilles corporation without withholding any federal income taxes. Moreover, the Antilles government does not impose any withholding tax on interest paid by an Antilles corporation to its foreign bondholders, and does not impose an estate or inheritance tax on nonresidents with respect to the debt obligations of an Antilles corporation. Finally, the Antilles has a relatively low corporate income tax rate, and has no currency or exchange controls. Curacao International Trust Co. N.V., *An Introduction to the Taxation*

*of Offshore Companies in the Netherlands Antilles* (2d ed. 1977).

In March 1972, plaintiff, to attract foreign capital, formed Fedders Capital N.V., a Netherlands Antilles corporation (Fedders Capital). Plaintiff capitalized Fedders Capital with $6,000,-000, which was recorded on Fedders Capital's books as capital stock and capital surplus.

In April 1972, Fedders Capital sold $30,000,000 of debentures in the European Common Market. Under the offering's terms the debentures bore interest at 5% a year and matured on May 1, 1992. Fedders (plaintiff's parent) guaranteed the principal and interest payments, although the guarantee was subordinated to the prior payment in full of all of its senior indebtedness. The debentures were convertible at $47.25 per share into Fedders' common stock, which was publicly traded on the New York Stock Exchange.

After Fedders Capital sold the debentures, it made the following loans to its parent, the plaintiff:

| Date | Interest Rate | Amount | Maturity |
|------|--------------|--------|----------|
| 5/4/72 | 5% | $22,500,000 | 5/4/87 |
| 5/4/72 | 5% | 6,500,000 | 1/29/73 |
| 8/3/73 | 5% | 9,500,000 | 10/31/74 |
| 11/7/73 | 9½% | 600,000 | 10/31/74 |
| 6/21/74 | 5% | 3,200,000 | 5/4/87 |

The plaintiff used the funds to discharge Eurodollar loans and to reduce its short-term United States bank obligations. For the fiscal year ending August 31, 1972 the plaintiff's indebtedness to Fedders Capital was $29,000,000 and the interest paid on such indebtedness was $471,251; for the fiscal year ending August 31, 1973 the plaintiff's indebtedness to Fedders Capital was $32,000,000 and the interest paid on such indebtedness was $1,599,350; and for the fiscal year ending August 31, 1974 the plaintiff's indebtedness to Fedders Capital was $35,-

800,000 and the interest paid on such indebtedness was $1,677,-503. The sources of these funds loaned by Fedders Capital to plaintiff were principally the $30,000,000 obtained from the sale of the convertible debentures and the $6,000,000 with which the plaintiff had originally capitalized Fedders Capital.

## II

The Corporation Business Tax Act, *N.J.S.A.* 54:10A-1 to -32, enacted in 1945, requires that a corporation shall pay an annual franchise tax "for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." *N.J.S.A.* 54:10A-2. Calculation of the tax was based in part upon a percentage of the corporation's "net worth" or "net income."

"Net worth" was defined as

the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) *the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayers' capital stock of all classes, as of the close of a calendar or fiscal year.* [*N.J.S.A.* 54:10A-4(d) (emphasis added).]

The definition was amended on June 30, 1982 by eliminating item (5) above, *L.*1982, *c.* 55, § 1, effective as of July 1, 1984, *id.* § 3. However, item (5) is relevant and material in this case, which involves taxes for prior years.

The statute also provided that "entire net income"

shall be determined without exclusion, deduction or credit of:

\* \* \*

(E) 90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes; except that such interest may, in any event, be deducted

(i) up to an amount not exceeding $1000.00;

(ii) in full to the extent that it relates to bonds or other evidences of indebtedness issued, with stock, pursuant to a bona fide plan or reorganization, to persons, who, prior to such reorganization, were bona fide creditors of the corporation or

its predecessors, but were not stockholders or shareholders thereof; * * *. [*N.J.S.A.* 54:10A–4(k)(2).]

This section has remained in place except for the addition of three more exclusions, none of which is pertinent. *L.*1979, *c.* 76, § 1; *L.*1979, *c.* 388, § 12; *L.*1981, *c.* 259, § 1; *L.*1981, *c.* 467, § 1.

"Indebtedness owing directly or indirectly" was defined to include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes. [*N.J.S.A.* 54:10A–4(e).]

The Director promulgated two regulations interpreting the above statutory provisions. *N.J.A.C.* 18:7–4.5(d) provided that indebtedness is includible if the taxpayer and its creditor are both substantially owned or controlled by the same interests, or if the creditor is controlled directly or indirectly by holders of 10% or more of the taxpayer's outstanding stock.[1] Similarly, *N.J.A.C.* 18:7–5.2(a)(7) provided that 90% of such indebtedness may not be deducted as an expense in computing the taxpayer's net income.[2]

---

[1]The Attorney General contends that the above statement is a correct interpretation of the regulation, *N.J.A.C.* 18:7–4.5(d), which reads as follows:

(d) In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness, if not includible by reason of direct ownership of taxpayer's stock by such creditor, shall be includible if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders, which in the aggregate hold ten percent or more of the taxpayer's outstanding shares of capital stock of all classes. For the purpose of determining the degree of stock ownership of a corporate creditor, all the shares of the taxpayer's capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated.

[2]*N.J.A.C.* 18:7–5.2(a)(7) reads as follows:

(a) Add to Federal taxable income:
* * *

It has been the consistent position of the Director that all indebtedness owed by a taxpayer corporation to an affiliated corporation (which includes indebtedness owed by a subsidiary to a parent corporation, by a brother to a sister corporation when both are owned by a common parent, or by a corporation to its subsidiary when both are owned directly or indirectly through corporate instrumentalities by a common parent) should be factored into the computation of a taxpayer's net worth tax base under section 54:10A–4(d) of the Act. Similarly, the Director has refused pursuant to section 54:10A–4(k)(2)(E) to exclude from a taxpayer's "net income" 90% of the interest that the taxpayer pays its affiliated corporation on such indebtedness.

### III

The legal issues are what constitutes "indebtedness owing directly or indirectly" between a corporation and its wholly owned subsidiary, and whether the Director's interpretative regulations concerning that phrase are consonant with the statutory provision.

Two principles of statutory interpretation are relevant to our analysis of this taxing statute. First, the court should

---

7. The amount deducted, in computing Federal taxable income, for interest on indebtedness (whether or not evidenced by written instrument) directly or indirectly owed to an individual stockholder or members of his immediate family who, in the aggregate, own beneficially ten per cent or more of the taxpayer's outstanding shares of capital stock, or to a corporate stockholder, including its subsidiaries, which owns beneficially, directly or indirectly, ten per cent or more of the taxpayer's outstanding shares of capital stock, minus [ten percent] of amount so deducted or $1,000.00, whichever is larger. Thus, if the amount of such interest is $1,000.00 or less, then none of said amount need be added back. A taxpayer is not required to add back interest paid or accrued on bonds or other evidences of indebtedness issued, with stock, pursuant to a bona fide plan of reorganization to persons who prior to such reorganization, were bona fide creditors of the taxpayer or any predecessor corporation, but were not stockholders thereof.

follow the clear import of statutory language. *In re James-burg High School Closing,* 83 *N.J.* 540, 547 (1980). Second, when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer. We applied those guidelines in *Kingsley v. Hawthorne Fabrics,* 41 *N.J.* 521 (1964), when interpreting two of the same provisions that are under consideration here, *N.J.S.A.* 54:10A-4(d) and -4(e). In *Kingsley, supra,* 41 *N.J.* at 528-29, we quoted approvingly the following language from *Gould v. Gould,* 245 *U.S.* 151, 153, 38 *S.Ct.* 53, 53, 62 *L.Ed.* 211, 213 (1917):

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

■ The *Gould* principle that statutes levying taxes should be construed against the government in case of doubt has been subject to some criticism.[3] Griswold, "An Argument Against the Doctrine that Deductions Should be Narrowly Construed as a Matter of Legislative Grace," 56 *Harv.L.Rev.* 1142 (1943); Note, "Statutory Construction: Presumptions: Interpretation of Tax Statutes," 42 *Cornell L.Q.* 589 (1957). We continue to adhere to the view that our task is to ascertain the legislative

---

[3]The Supreme Court has never repudiated the *Gould* principle, but it did not apply the principle in *White v. United States,* 305 *U.S.* 281, 59 *S.Ct.* 179, 83 *L.Ed.* 172 (1938), which involved a claim for a deduction as distinguished from a claim of the inapplicability of the statute. The Circuit Courts of Appeal have continued to adhere to the *Gould* principle. *See United States v. Brown,* 536 *F.* 2d 117, 122 (6th Cir.1976); *B & M Co. v. United States,* 452 *F.*2d 986, 990 (5th Cir.1971); *Gellmann v. United States,* 235 *F.*2d 87, 89-90 (8th Cir.1956); *Charles Leich & Co. v. United States,* 210 *F.*2d 901, 907 (7th Cir.1954). Mertens writes that the "courts have repeatedly held as a general rule that in cases of ambiguity doubts should be resolved in favor of the taxpayer." J. Mertens, *Law of Federal Income Taxation* § 3.05 (Doheny 1981) (footnotes omitted). *But see Bronson v. Commissioner,* 183 *F.*2d 529, 536 (2d Cir.1950) (by negative inference criticizing the *Gould* principle by noting in passing that the principle was "in vogue" in 1929 and 1930); *Endler v. United States,* 110 *F.Supp.* 945, 949 (D.N.J.1953) (the *Gould* principle is "no longer the law").

intent. When the statutory language is unclear and the legislative history is wanting, the doubt referred to in *Gould* exists and its principle is applicable. This situation is to be distinguished from the one in which the taxpayer seeks an exemption from a taxing statute. Then the probable legislative intent is one of inclusion and exemptions are to be construed narrowly. *Boy's Club of Clifton v. Township of Jefferson,* 72 *N.J.* 389, 398 (1977).

In *Kingsley, supra,* 41 *N.J.* 521, the taxpayer, Hawthorne Fabrics, Inc. ("Hawthorne"), was owned by Isaac and Matilda Brawer, husband and wife. Isaac Brawer's two brothers, Irving and Louis Brawer, were the sole stockholders of Brawer Bros. Silk Co. (Brawer). Hawthorne and Brawer did business with each other, as a result of which on December 31, 1957 Hawthorne was indebted to Brawer. *Id.* at 523. The Director's attempt to increase Hawthorne's net worth by the amount of that indebtedness was rejected. The statute, then as now, included in the taxpayer's net worth indebtedness owing directly or indirectly to a 10% stockholder or to "members of his immediate family." We interpreted the word "family" narrowly to include only those "living together in one home, in a permanent and domestic character, under one head." *Id.* at 527. The Director argued that a broader interpretation of "immediate family" was consistent with the underlying policy of the statute, since deficit financing can be effected by loans from brothers as well as from members of the stockholder's household. We refused to accept that contention and quoted from *Public Service Coordinated Transp. v. State Bd. of Tax Appeals,* 115 *N.J.L.* 97, 104 (Sup.Ct.1935): "The legislative body must express its intention to tax in distinct and unambiguous language." 41 *N.J.* at 529–30.

We have required such specificity in other comparable situations. *General Public Loan Corp. v. Director, Div. of Taxation,* 13 *N.J.* 393 (1953), concerned a taxpayer, a wholly owned subsidiary of American Investment Company of Illinois (American), that was engaged in the small loan business. The taxpay-

er borrowed funds from time to time from its parent American. The Director included the amount of indebtedness as of December 31, 1947 in the calculation of the taxpayer's net worth under the Financial Business Tax Law, *L.*1946, *c.* 174, § 2, which contained substantially the same definition of net worth as in the Corporation Business Tax Act. We affirmed that determination despite American's protestation that it had borrowed the monies from banks and insurance companies, which were the real creditors. The literal language of the statute compelled the result because the indebtedness was owed directly from the taxpayer to its parent.

In *R.H. Macy & Co. v. Director, Div. of Taxation,* 77 *N.J.Super.* 155 (App.Div.1962), aff'd o.b., 41 *N.J.* 3 (1963), R.H. Macy, the taxpayer, sought to deduct from its net worth indebtedness owed to it by its wholly owned subsidiary under a provision of the Corporation Business Tax Act. 77 *N.J.Super.* at 173. The Act permitted a taxpayer that held capital stock of a subsidiary to deduct from its (the parent's) net worth the average value of "such holdings" less net liabilities owed to the subsidiary. *N.J.S.A.* 54:10A–9. The Director was upheld because "such holdings" was construed to refer only to capital stock and not to indebtedness owed to a parent by a subsidiary. Judge Conford, writing for the Appellate Division, observed that neither the administrative agency nor the court could take liberties with the statutory language "even to subserve a supposedly desirable policy not effectuated by the act as written." 77 *N.J.Super.* at 173.

Other opinions have adopted the same analysis by reading literally the taxing statute. In *Somerset Apartments, Inc. v. Director, Div. of Taxation,* 134 *N.J.Super.* 550, 552 (App.Div. 1975), a corporation held title to an apartment complex as nominee of seven partners. The partners had transferred title to the corporation that they had organized in order to mortgage the complex at interest rates above the legal limit for individual borrowers. *Id.* at 553. The Appellate Division refused to recognize the corporation's nominee status. The court deter-

mined that the form of the ownership was corporate, and therefore the corporation was properly subject to the corporation business tax on the real property in its name, despite the fact that it held title to the property "solely as a nominee for the benefit of others." *Id.* at 555. Since the statutory language was unambiguous, the court applied the statute literally.

## IV

The key statutory phrase to be interpreted in this case for purposes of determining net worth and net income is "indebtedness owing directly or indirectly" to stockholders holding 10% or more of the taxpayer's capital stock. It is the indebtedness of the taxpaying corporation that must be *owed to the stockholder.* The debt *may* be owed directly or indirectly. However, the taxpaying corporation *must* owe the debt to the controlling entity.

In the case of a direct debt, the obligation must be owed directly to the parent. The indebtedness may arise from a direct transaction between the two as in *General Public Loan Corp. v. Director, Div. of Taxation, supra.* It may also occur when the direct obligation comes into existence at some time after the original indebtedness is created. An example of this type is found in *Interstate Storage and Pipeline Corp. v. Director, Div. of Taxation* [1966–79 Transfer Binder] [N.J.] *St.Tax Rep.* (CCH) ¶ 200–708 (Div. of Tax Appeals, Dec. 2, 1976). In that case the taxpayer borrowed money from the Wisconsin Industrial Board. Some time thereafter the taxpayer became the wholly owned subsidiary of Delaware Storage and Pipeline Corporation (Delaware), which also acquired the indebtedness owing to the Wisconsin Industrial Board. This debt was held to be includible in calculating the taxpayer's net worth. The money was directly owed by the taxpayer to its parent corporation. Interestingly, the Division of Tax Appeals noted that if Delaware had structured the transaction differently by guaranteeing payment of the taxpayer's indebtedness

rather than becoming the obligee, the net worth would not have been increased because then the debt would not be owing to the taxpayer's parent. *Id.* at 10,610.

It is crucial, then, that the direct debt be owed to the parent or controlling stockholders. Thus, if the taxpayer borrows money from a third party, such as a bank, an insurance company, or the public, that indebtedness should not be added to the net worth of the taxpayer. It is not owed to the parent.

The same principle should apply when the taxpayer borrows monies from an affiliated corporation unless those monies are indirectly owed to the parent. Assume A corporation owns B and C corporations, and the subsidiaries are engaged in their respective businesses. B has generated unneeded cash from its operations or has sold some of its securities to third persons (other than to the parent) and the proceeds are available for loans. B then advances some of that money to C. C's indebtedness is not owed to A directly or indirectly. If, however, A sold its securities and advanced funds to B, which in turn loaned dollars to C, then the indebtedness would be indirectly owed to A and under the statute should be included in the calculation of C's net worth. There may be situations that are mixed. A may have made advances to B that had also obtained funds by borrowings from non-affiliated entities. C then borrows from B. In that event it would be presumed that C's indebtedness was indirectly owing to A. However, such a presumption should not be conclusive. If C establishes that A is not the source of the money, then the indebtedness would not be indirectly owing to the parent and hence would not be includible in C's net worth calculation. When it is not clear whether the indebtedness is indirectly owed to the parent, the taxpayer has the burden of demonstrating that the indebtedness is owed to third party creditors and not to the parent corporation.

The interpretation we have given to the statute accords not only with its language but also with the legislative intent to

treat certain loans between affiliated corporations as a disguised contribution of shareholder equity. Initially, the state franchise tax was levied on the basis of a corporation's capital stock. *R.S.* 54:13–6 (1937). The Legislature restructured this tax because of its dissatisfaction with another statutory requirement, *L.*1851, *p.* 271, that a corporation's intangible personal property, such as stocks, bonds, and notes, should be valued for municipal tax purposes by the local assessors and at local rates. *See* New Jersey Commission on Taxation of Intangible Personal Property, *Report* 9–21 (1945). The Corporation Business Tax Act, enacted in 1945, *L.*1945, *c.* 162, replaced this revenue-raising tax scheme with a uniform statewide tax. Though denominated as a franchise act, the statute had a revenue-raising purpose as well. *See N.J.S.A.* 54:10A–2 (stating "such franchise tax shall be in lieu of all other State, County or local taxation upon or measured by intangible personal property").

The Act, though amended from time to time, has remained substantially intact. The provision that required the inclusion in "net worth" of the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the outstanding shares of the taxpayer's capital stock, *N.J.S.A.* 54:10A–4(d), has remained unchanged for our purposes except for two modifications. In 1947 "indebtedness owing directly or indirectly" was defined to include obligations owing not only to the stockholder but to members of his immediate family. *L.*1947, *c.* 50, § 1. In 1979 financial business corporations that were funded through debt from affiliated corporations were excluded from the operation of section 54:10A–4(d). *L.*1979, *c.* 76, § 1.

The only express indication of the legislative intent with respect to including indebtedness in a corporation's net worth is found in the 1947 report issued before a reenactment, *L.*1947, *c.* 50, § 1, of the "net worth" definition in 1947. In that report the following comments concerning the net worth provision appear:

> Corporations which are largely or entirely financed by borrowed capital hold assets and conduct business in the same manner as to those financed largely or entirely by equity capital. Deficit corporations exercise the same privilege to do business in New Jersey and they require the same public services as do corporations which have few or no debts.
>
> The Commission finds that the Corporation Business Tax Act should be adjusted to provide a more suitable tax base for corporations holding substantial assets but reporting little or no net worth. While provisions of the act requiring adjustment of net worth to include debts owed to holders of 10 per cent or more of the capital stock provide some correction for discrepancies of this kind, they do not in every instance result in a suitable tax base for corporations operating largely upon borrowed capital. [New Jersey Commission on State Tax Policy, *Second Report* 101 (1947).]

Thereafter, the court observed in *Werner Machine Co. v. Director, Div. of Taxation,* 6 *N.J.Super.* 188, 193 (App.Div. 1950):

> It is clear that under the pertinent statute the legislative intendment was the imposition of a franchise tax upon all corporations doing business within New Jersey, exacting as a fee that which would result in a proportionately equal burden upon all corporations whether they operate on deficit financing or on an equity capital basis.

Accordingly, the legislative intent was to determine a corporation's net worth by including its real capitalization, whether reflected by its capital stock and surplus or by debt owing to its parent. Not any and all debt was to be included, but only that furnished directly or indirectly by the parent. In such cases, the debt would conceptually and realistically be part of the corporation's net worth.

■ The foregoing analysis is equally applicable to the net income provision of the statute, which disallows as a deduction from net income 90% of interest on "indebtedness owing directly or indirectly to holders of 10% or more" of the taxpayer's outstanding capital stock. *N.J.S.A.* 54:10A–4(k)(2)(E). The statute contains a single definition of the phrase "indebtedness owing directly or indirectly," *N.J.S.A.* 54:10A–4(e), applicable to both the net worth and net income provisions. The statutory interpretation principles and legislative history discussed with respect to net worth are similarly apropos to the net income provision.

The difficulty with the Director's regulations is that they set up a *per se* rule, so that any advances made by one subsidiary to another irrespective of whether the indebtedness emanates indirectly from the parent are automatically included in the borrower's net worth computation. To the extent that is so, the regulations are *ultra vires.*

█ We cannot uphold the Director's regulations, *N.J.A.C.* 18:7–4.5(d) and –5.2(a)(7), which automatically include in a subsidiary's net worth any advances the subsidiary has made as fellow subsidiary and exclude only 10% of the interest on such indebtedness in computing net income, regardless of whether the indebtedness emanates directly or indirectly from their common parent. Such a *per se* rule exceeds the express language of the statute.

It is well established that the Director's regulatory authority cannot go beyond the Legislature's intent as expressed in the statute. As Justice Clifford observed in *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 563 (1976), "an administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment." Earlier, in *Kingsley v. Hawthorne Fabrics, supra,* 41 *N.J.* 521, we struck down a Director's regulation because its interpretation of a statutory term went beyond the import of the statutory language, and observed that "[a]n administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows." *Id.* at 528. *See also Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973) (an appellate tribunal is "in no way bound by the agency's interpretation of a statute"); 3 Sutherland, *Statutory Construction* § 66.04 (Sands 4th ed. 1974); *cf. Salomon v. Jersey City,* 12 *N.J.* 379, 388–89 (1953) (a municipality's interpretation of a state taxing statute is not binding on the courts).

When we apply the principles we have enunciated to the facts of this case, we find that the plaintiff borrowed funds, not from

its parent, but from an affiliated corporation, Fedders Capital. Moreover, the plaintiff formed Fedders Capital and invested its (plaintiff's) capital for that purpose. The undisputed reason that it established Fedders Capital was to enable the plaintiff to tap the Eurodollar market. As noted previously, Eurodollar transactions are designed to enable a foreign investor to avoid federal income and estate taxation on the purchase of what is in substance a security of a domestic company, such as the plaintiff, although the investor in fact acquires a security of an offshore affiliate of the domestic company, such as Fedders Capital. This foreign source of funds has dramatically increased in recent years and has become a major supplier of purchasers of debt securities of domestic corporations. Thus, in 1982 Eurodollar and other foreign currency bond markets accounted for approximately 28% or $14,600,000,000 of public debt financing by United States corporations. Securities Industry Association, *The Importance of Access to Capital Markets Outside the United States* sched. V (May 1983).

It is clear here that the plaintiff used its international offshore finance subsidiary, Fedders Capital, to gain the federal tax advantages afforded by the Eurodollar market. Fedders Capital made a public offering of $30,000,000 of its debentures and the entire proceeds were reloaned to the plaintiff on substantially the same terms as the public offering. This indebtedness is not owed by the plaintiff to its parent, Fedders. It is understandable that the Attorney General has not argued that Fedders' guarantee of the indebtedness of Fedders Capital and the possible convertibility of Fedders Capital debentures into Fedders' common stock are bases for holding that the indebtedness is indirectly owing to the parent. We do not mean to imply, however, that if the guarantee had been triggered and satisfied so that a debt was owing to Fedders, or if the debentures had been converted into Fedders' common stock, plaintiff's net worth should not be increased accordingly. *See Interstate Storage and Pipeline Corp. v. Director, Div. of Taxation, supra* (indebtedness of taxpayer originally incurred

from third person subsequently was due to parent and was included in taxpayer's net worth).

■ The plaintiff is entitled to the exclusion of the debts owed to its subsidiary from plaintiff's net worth and to the deduction of the entire amount of the interest paid on that indebtedness for the fiscal years ending August 31, 1972, 1973, and 1974. The judgment is reversed.

HANDLER, J., dissenting.

This appeal by the taxpayer, Fedders Financial Corporation (Fedders Financial or taxpayer), challenges the determination by the Tax Court of New Jersey affirming an assessment imposed by the defendant, Director of the New Jersey Division of Taxation (Director). The taxpayer is a wholly owned subsidiary of Fedders Corporation and owns all of the stock of Fedders Capital, N.V. (Fedders Capital or subsidiary), a Netherlands Antilles Corporation. The narrow legal issue in this case is whether a debt owed by Fedders Financial to its subsidiary, Fedders Capital, constitutes an indebtedness that is owed indirectly by Fedders Financial to its own parent, Fedders Corporation, within the meaning of the New Jersey Corporation Business Tax Act, *N.J.S.A.* 54:10A-1 *et seq.* (Act). The characterization of the debt as indebtedness owed indirectly to the parent corporation under the Act results in the disallowance of that liability in computing net worth, thereby increasing the taxable net worth of the taxpayer. Further, pursuant to the Act, it results in the disallowance of ninety per cent of the interest expense related to such indebtedness as a deduction in computing the taxpayer's entire net income, thereby increasing the taxpayer's taxable income.

I would affirm the determination of the Director, the Tax Court and the Appellate Division that Fedders Financial, in computing its tax liability under the Act, should have included, as part of its net worth pursuant to *N.J.S.A.* 54:10A-4(d) and 4(e), the debt owed to the taxpayer's wholly owned subsidiary. I would also uphold the corollary determination that the taxpay-

er should not have deducted, in calculating "net income" under *N.J.S.A.* 54:10A–4(k)(2)(E) and 4(e), ninety per cent of the interest on the debt owed the subsidiary. I therefore dissent from the opinion of the majority.

I

The facts are not disputed. The taxpayer, Fedders Financial, itself a wholly owned subsidiary of Fedders Corporation, owns all of the stock of Fedders Capital, its subsidiary. The taxpayer was created by Fedders Corporation to finance the wholesale and retail commercial paper generated by the sale of air conditioners and other products manufactured by Fedders Corporation. Fedders Capital was formed by Fedders Corporation as the wholly owned subsidiary of the taxpayer solely for the purpose of raising money on behalf of the taxpayer through sources in the European Common Market. This corporate structure, created to obtain foreign financing for taxpayer, was devised and utilized in order to gain certain federal tax benefits. Under the federal scheme, the taxpayer could take advantage of certain provisions that do not require the withholding of federal income taxes on interest paid by a foreign corporation to foreign lenders. Thus, the subsidiary here, Fedders Capital, was organized as a foreign corporation by Fedders Corporation, the parent of the taxpayer, Fedders Financial, in order to borrow moneys for the taxpayer's benefit from foreign lenders without withholding federal income taxes on the interest paid on such financing.

The taxpayer filed corporation business tax returns with the Director for fiscal years 1972 to 1974. Following an audit of those returns, the Director issued a deficiency assessment on the ground that the indebtedness owed by taxpayer was includible in its net worth pursuant to *N.J.S.A.* 54:10A–4(d) and –4(e) and that ninety per cent of the interest expense relating to the indebtedness was not deductible in calculating the plaintiff's

entire net income base in accordance with *N.J.S.A.* 54:10A–4(k)(2)(E) and 4(e). That determination generated this appeal.

As noted, the sole issue in this case is the tax treatment of the debt owed by taxpayer to its subsidiary for the tax years in question and whether that debt is to be considered an includible indebtedness under the Act. The results of such a determination are twofold: (1) if the indebtedness is not considered a valid liability for statutory net worth tax purposes, it is not allowed as a deduction from the taxpayer's net worth tax base; (2) if the indebtedness is disallowed as a deduction from taxable net worth, then ninety per cent of the interest expense incurred with regard to this debt is disallowed as an expense in computing the taxpayer's statutory net income tax base.[1]

## II

The Act is a franchise tax exacted by the State of New Jersey from every domestic and foreign corporation. The tax is imposed upon corporations for the privilege of doing business, employing or owning capital or property, or maintaining an office in this State, *N.J.S.A.* 54:10A–2. It is not a tax on underlying property or assets or income of the corporation but upon the corporation's franchise or privilege of operating in the state. Accordingly, the tax is computed or measured by percentages of a net worth tax base and a net income tax base. *N.J.S.A.* 54:10A–4(d) and 4(k).

---

[1]*N.J.S.A.* 54:10A–4(d)(5) provides that net worth shall include

the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes, as of the close of a calendar or fiscal year. *N.J.S.A.* 54:10A–4(k)(2)(E) states that entire net income shall be determined without the exclusion of

90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes....

The scope of the indebtedness provision at issue was fully considered in *Werner Machine Co., Inc. v. Zink,*[2] 6 *N.J.Super.* 188, 193 (App.Div.1950):

> So that corporations holding extensive assets may not, by borrowing money from large stockholders (which in reality increases their operating capital), reduce their reported net worth and avoid payment of a higher franchise tax, provision was made to include as net worth all indebtedness owing directly or indirectly to owners of ten per centum (10%) or more of the aggregate stock of the debtor corporation.

The justification, therefore, for including indebtedness owed by the taxpayer corporation to a ten per cent or more stockholder inheres in the fact that such indebtedness could potentially conceal contributions to capital. A direct contribution to a corporation's capital by a stockholder would result in an increase in the corporation's net worth and, concomitantly, in an increase in the net worth tax. The same contribution by a stockholder, couched in the form of a loan, however, could be reflected on the corporation's books as a liability, and, thereby, would not be included in the corporation's net worth tax base. Further, the interest paid on such a putative loan could be regarded as an income expense and taken as a deduction in computing the entire net income tax base. Prompted by these considerations, the Legislature determined to classify specially debt that is owed by a corporate taxpayer to a stockholder owning ten per cent or more of the corporate stock and to treat any indebtedness in this narrow classification as a nondeductible liability in measuring the capital or net worth tax base, and, further, to disallow ninety per cent of the interest expense attributable to debts in this class as a deduction from the entire net income tax base.

In *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521 (1964), the Court approved the analysis presented in *Werner Machine, supra,* 6 *N.J.Super.* 188, and further recognized that the Legis-

---

[2] At the time of *Werner Machine, supra,* 6 *N.J.Super.* 188, the Act consisted only of a net worth tax base. The net income tax portion of the statute first became operable for the 1958 tax year. See *L.* 1958, *c.* 63.

lature had provided a bright line test in enacting the indebtedness provision. The Legislature did not provide merely a rebuttable presumption that indebtedness owed to an owner of ten per cent or more of the corporate stock should be considered the equivalent of equity capital. Rather, such a presumption was conclusive; it was not subject to rebuttal by allegations that the liability was *bona fide* or originated for valid business reasons or that it was not created simply to conceal capital contributions.

> The statute imposes a franchise tax upon all corporations doing business within New Jersey, measured by the "net worth" of the taxpayer corporation. In order to effect a proportionately equal tax burden on all corporations, provision was made to include in net worth all indebtedness owing directly or indirectly to a 10% stockholder or to "members of his immediate family" for the reason that in reality such loans or extensions of credit usually are contributions to capital and hence should not be treated as liabilities in calculating the net worth for the purpose of this tax. *See Werner Machine Co., Inc. v. Zink,* 6 *N.J.Super.* 188 (App.Div.1950). In other words, *N.J.S.A.* 54:10A–4(e) conclusively presumes that a corporate indebtedness owing to a 10% stockholder or a member of his immediate family is equity capital. The Legislature apparently thought that loans made or credit extended· by certain persons close to the stockholder should be presumed to have been made as a result of the relationship between them and the control probably exercised by the stockholder over the creditor by reason thereof. In short, the statute thwarts such manipulation or maneuvering by the stockholder to reduce the amount of the tax.
> [*Kingsley v. Hawthorne Fabrics, Inc., supra* 41 *N.J.* at 525–26.]

Applying this bright line test, courts have held that a variety of legitimate obligations, such as the temporary accrual of interest, *Werner Machine Co., Inc. v. Zink, supra,* 6 *N.J.Super.* 188, and accrued salaries, bonuses and dividends, *Cliffside Dyeing Corp. v. Zink,* 6 *N.J.Super.* 185 (App.Div.1950), that were owed to stockholders holding ten per cent or more of the taxpayer's outstanding stock fell within the narrow statutory classification and constituted indebtedness properly disallowed in calculating taxable net worth. Notwithstanding that the debt [3] in each of these cases was clearly not incurred in order to

---

[3]It is relevant to note that the term "indebtedness" has been defined broadly to include any type of liability:

conceal contributions to capital or for improper business reasons, the indebtedness came within the special statutory classification and was disallowed as a deduction from taxable net worth for purposes of the Act.

The *Werner Machine* court viewed the phrase "directly or indirectly owing" as "intended to provide for a situation where a stockholder, otherwise coming within the statutory language, might extend credit to the corporation either personally or through an instrumentality managed or controlled by him, thus making such a loan includible in the tax base." 6 *N.J.Super.* at 194. In short, the test that was developed for includibility of indebtedness owed to stockholders, as well as debts between related corporations, is a bright line test of "nexus and control." *Skyline Industries, Inc. v. Director, Div. of Taxation,* 3 *N.J.Tax* 612 (1981).

The judicial understanding of the legislative language and purpose is confirmed by the consistent and continuous administrative interpretation and application of the Act. The Director, pursuant to *N.J.S.A.* 54:10A–27, adopted *N.J.A.C.* 18:7–4.5(d) to effectuate the legislative intent with regard to intercorporate indebtedness. It provides:

> In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness, if not includible by

---

As defined by *Webster's New International Dictionary,* 2d ed., we find the word "indebtedness" to mean: "The sum owed, debts collectively." "Debt" in the present connotation is defined as "that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability."

While it may be that the definitive or lexicological significance of the expression "all indebtedness" might not be conclusive of the legislative intent, if there were in this statute indications significant of a narrow or restricted meaning ... we have not been directed to nor found any such justification. In the absence of any indication of a special meaning to be applied in the interpretation of the statute, the court must adhere to the ordinary meaning of the words as used in the statute. *Eckert v. New Jersey State Highway Department,* 1 *N.J.* 474 (Sup.Ct.1949). [*Werner Machine Co., Inc. v. Zink, supra,* 6 *N.J.Super.* at 193–94.]

reason of direct ownership of taxpayer's stock by such creditor, shall be includible *if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders,* which in the aggregate hold ten per cent or more of the taxpayer's outstanding shares of capital stock of all classes. For the purpose of determining the .degree of stock ownership of a corporate creditor, all the shares of the taxpayer's capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated. [Emphasis supplied.]

This regulation reflects the position of the Division of Taxation, followed since enactment of the Act, that all liabilities owed by a taxpayer to an affiliated corporation that is either vertically or horizontally related to the taxpayer through a common parent constitute taxable indebtedness. It accurately mirrors the interpretation of the court in *Werner Machine, supra,* 6 *N.J.Super.* 188, which, as noted, expressly considered the meaning of the statutory phrase "directly or indirectly" in the context of the indebtedness provision. The Director thus clearly recognized, as did the court, that this kind of indebtedness could be easily created indirectly by means of the stockholder's use of interrelated corporate instrumentalities, rather than by making a direct loan to a subsidiary corporation.

This interpretation must be accorded deference, since it reflects the understanding long held by the courts and actually applied by the responsible administrative body. It is well established that a continuous course of practical construction and application of a tax statute by the responsible taxing agency is a factor of potent relevancy in the judicial interpretation of the law. *Public Service Electric & Gas Co. v. Woodbridge Tp.,* 73 *N.J.* 474, 481 (1977); *Lloyd v. Vermeulen,* 22 *N.J.* 200 (1956); *Hoeganaes Corp. v. Director, Div. of Taxation,* 145 *N.J.Super.* 352, 360 (App.Div.1976); *J.B. Williams, Inc. v. Glaser,* 114 *N.J.Super.* 156, 160 (App.Div.1971).

A further indicator of the correctness of the Director's understanding of the tax provision and its application in this case is the recent amendment to the Act, *L.*1979, *c.* 76. The Legislature, as a result of applying the Act to financial business

corporations,[4] provided an exception for such corporations under the Act's special indebtedness provision. Thus, *L.*1979, *c.* 76, amended *N.J.S.A.* 54:10A–4(d)(5) (defining net worth) by providing that

> In the case of financial business corporations which are funded through debt from affiliated corporations, the debt *to the affiliated corporations* is not to be considered as "net worth." [Emphasis supplied.]

A complementary provision was inserted under the net income tax section that provided that indebtedness interest may be deducted

> [i]n full to the extent that it relates to debt of a financial business corporation owed to an affiliate corporation; provided that such interest rate does not exceed 2% over prime rate .... [*N.J.S.A.* 54:10A–4(k)(2)(E)(iii).]

The amendment to the indebtedness provisions of the Act[5] is relevant in understanding the legislative intent. *Nagy v. Ford Motor Co.*, 6 *N.J.* 341, 348 (1951); *Essex Cty. Retail Liquor Stores Assoc. v. Municipal Bd. of Alcoholic Beverage Control of Newark*, 77 *N.J.Super.* 70, 78 (App.Div.1962); 1A *Sutherland Statutory Construction* § 22.30 (Sands 4th ed. 1973). It tends to confirm a basic, historical legislative understanding that debts, and the interest paid on debts, between affiliated corporations should be disregarded as deductions in computing the net worth and net income tax bases. Further, the amendment effectuates a substantive change of the franchise tax. Clearly the amendment to the special indebtedness provisions of the Act would have been unnecessary if the statutory definition of indebtedness owed directly or indirectly to a ten per cent or more stockholder did not already include indebtedness arrangements between affiliated corporations.

---

[4]"Financial business corporations," as defined by *N.J.S.A.* 54:10A–4(m), are corporations that are doing financial business and were formerly subject to the Financial Business Tax Law, *N.J.S.A.* 54:10B–1 *et seq.* As a result of the enactment of *L.*1975, *c.* 171, such corporations became subject to the Corporation Business Tax Act for tax years commencing after December 31, 1974.

[5] A similar amendment, *L.*1981, *c.* 467, revised *N.J.S.A.* 54:10A–4(d) and *N.J.S.A.* 54:10A–4(k) to exclude as taxable indebtedness liabilities owed by banking corporations to affiliated bank holding companies.

This interpretation is further supported by reason and logic. Ultimate control of the indebtedness is the critical feature the Act is designed to address. Consequently, the provision should apply to debts between subsidiaries. From the standpoint of essential control of the obligation, debts between subsidiaries for these tax purposes are no different from debts between subsidiary and parent. In both instances the parent, through its ownership, can dominate the destiny of the debt within the corporate family regardless of the intercorporate arrangements, understanding, or operations.

The "nexus and control" test requires a factual analysis of the ownership relationships between the creditor and the debtor, and not of the origins or purposes of the debt. Here, the Director and the Tax Court concluded, based upon all of the information contained in the record, that Fedders Financial is in fact sufficiently controlled by Fedders Corporation to render the indebtedness includible in taxpayer's net worth tax base. This ultimate factual conclusion—the overriding corporate control by Fedders Corporation of its corporate child and grandchild—is not disputed and dictates the tax consequences recognized by the Director.

This result not only comports with the language of the statute, but also advances the policies that inspired the passage of the special indebtedness provision. The Director and the Tax Court were mindful of the manipulative opportunities that the Act was intended to foreclose. The effectuation of this legislative purpose mandates that the Act apply to debts between subsidiaries, just as to debts between subsidiary and parent, as the opportunity for manipulation through paramount corporate control exists in both contexts.

The majority rejects this conclusion by insisting that the literal meaning of the phrase "indebtedness owing directly or indirectly" under *N.J.S.A.* 54:10A–4(d) refers only to a debt owed to the parent corporation. *Ante* at 388–390. It observes that the purpose of the special indebtedness provision

was to "provide some correction" as to corporations holding or controlling substantial assets but reporting a disproportionately reduced net worth, citing New Jersey Commission of State Tax Policy, *Second Report* 101 (1947). *Ante* at 391. The Court concedes that the legislative intent was to recognize the "real capitalization" of a corporation by including debt "furnished directly or indirectly by the parent." *Ibid.* The majority even acknowledges "the consistent position of the Director that all indebtedness owed by a taxpayer corporation to an affiliated corporation ... should be factored into the computation of a taxpayer's net worth tax base." *Ante* at 384. Nevertheless, the Court rejects this understanding, consistently advanced by the administrators charged with the enforcement of the Act. In terms of the purpose of the special indebtedness provision, the Court does not explain why a debt owed indirectly to the parent would not include a debt owed to an affiliated corporation owned and controlled by the parent. In the final analysis the Court's result is based upon resort to a judicially created "rule" of construction that in cases of doubt tax statutes are to be construed strictly in favor of the taxpayer. *Ante* at 384–385.

Application of this presumptive canon in the context of this tax contest, however, requires some analytical self-help. The majority suggests that this is a "case of doubt," *ante* at 385, assuming the "doubt" needed to trigger the canon of statutory interpretation that it has selectively chosen from a rather full arsenal. It disregards other basic principles that have traditionally governed the approach of this Court and of the United States Supreme Court to statutory interpretation in the area of tax law. First, an exception to the rule favoring taxpayers has long been found in cases involving tax avoidance—the disposition and arrangements of assets so as to effect tax savings. *Gregory v. Helvering*, 293 *U.S.* 465, 55 *S.Ct.* 266, 79 *L.Ed.* 596 (1935); *Morsman v. Commissioner*, 90 *F.*2d 18 (8th Cir.1937). *See* Note, "Statutory Construction: Presumptions: Interpretation of Tax Statutes," 42 *Cornell L.Q.* 589, 590 (1957) ("doubts

will not be resolved for the taxpayer in the consideration of transactions motivated by avoidance"). Second, interpretation of the revenue purpose and a willingness to look beyond the letter of the statute to effectuate that purpose. J. Mertens, *Law of Federal Income Taxation*, § 3.06 (1981); *Cammarata v. Essex County Park Commission*, 26 *N.J.* 404 (1958) (the purpose of a statute is not to be frustrated by narrow interpretation).

More fundamentally, this Court's analysis ignores the terms and structure of the statute that it purports to construe. *N.J.S.A.* 54:10A–4(d) cannot have been meant to entitle the taxpayer to exclude from its net worth debts owed to its subsidiary. By imposing upon the tax statute its own conception of the purpose of the Act, the Court has intruded on the agency's expertise. The administrator's interpretation of the operative law is entitled to prevail so long as it is not unreasonable or plainly inconsistent with the applicable statute. *Atlantic City Transportation Co. v. Director, Div. of Taxation*, 12 *N.J.* 130 (1953); *Ridolfi v. Director, Div. of Taxation*, 1 *N.J.Tax* 198 (Tx.Ct.1980); *Commissioner v. Engle*, —— U.S. ——, 104 *S.Ct.* 597, 78 *L.Ed.*2d 420 (1984); *Bingler v. Johnson*, 394 *U.S.* 741, 89 *S.Ct.* 1439, 22 *L.Ed.*2d 695 (1969). Thus, interpretations of the responsible agency are not to be dismissed as a passing curiosity but are entitled to great weight and should be followed if found reasonably to implement the legislative mandate in an appropriate manner.

Even if we assume that this is a "case of doubt," the interpretation of the Director must nonetheless prevail since, at the very least, it is as reasonable as the rival interpretations advanced by the taxpayer and now adopted by the Court. The majority ignores the principle that the choice among reasonable interpretations of the tax laws is for the Director, not the courts. *National Muffler Dealers Assn. v. United States*, 440 *U.S.* 472, 488, 99 *S.Ct.* 1304, 1312, 59 *L.Ed.*2d 519 (1979). The Director is better able than any court to assess the practical consequences of particular interpretations and to resolve statu-

tory ambiguities in ways that further the tax scheme and minimize administrative difficulties. *See Commissioner v. Engle, supra,* —— *U.S.* ——, 104 *S.Ct.* 597, 78 *L.Ed.*2d 420.

Rather than give due deference to this expertise, the Court has embraced an interpretation that is perhaps more appropriate to the complex and often tortuous federal statutory scheme than it is to our own. The Court accepts the taxpayer's argument that would require an application of federal tax law in reaching a particular tax result under our State tax statute. The taxpayer maintains that in reality the ultimate source of the borrowed funds was the overseas investment market that purchased the convertible debentures evidencing the debt, and consequently it is not a debt owed to a subsidiary but one owed to third-party lenders.

A similar argument, in a variant context, was previously considered and rejected by this Court in *General Public Loan Corp. v. Director, Div. of Taxation,* 13 *N.J.* 393 (1953). There the Court held that money obtained by a parent from outside lenders and in turn loaned to its small loan company subsidiary constituted an indebtedness that was properly includible in the subsidiary's net worth. This "conduit arrangement" utilized by the parent to provide its subsidiary with outside credit was not considered proper justification for avoiding the application of the indebtedness statute.

General further contends that although the actual facts place it squarely within *N.J.S.A.* 54:10B-2(c), *supra,* it should be relieved therefrom because in reality General effects its borrowing from others, "using" American merely as an agent, this corporate structure having been adopted merely to facilitate the business of the companies and compliance with the small loan laws in various states. Even in the absence of the proofs offered by General but excluded by the Division of Tax Appeals on objection by the respondent, there is adequate evidence to show the fact of the existence of this business practice in this case. However, the argument based thereon is in effect a contention that the corporate veil should be pierced to enable General to obtain a tax advantage which is denied it by its own voluntary act in subscribing to a course of business conduct designed to enable it (or its parent) to comply with statutes concerning the small loan business. There was no offer of proof that this corporate structure or business conduct was illegal or fraudulent. It is settled in this State that a corporation holds its property to its own use and not the use

of the stockholders, and unless a fraudulent purpose is disclosed there is no justification for attacking the corporate structure. *Frank v. Frank's Inc.,* 9 *N.J.* 218, 223–224 (1952). We find no merit in General's contention that a different philosophy should be applied in matters of corporation excise taxation. [13 *N.J.* at 400–401.]

The analysis set forth in *General Loan* is clearly applicable in the present context. The fact that Fedders Capital utilized outside credit sources in order to raise the cash advanced to the taxpayer does not negate the existence of a separate and identifiable indebtedness between the taxpayer and the subsidiary during the tax years in question. That indebtedness was structured by Fedders Corporation in order to facilitate its operations through subsidiary instrumentalities and to secure federal tax advantages. The taxpayer cannot now be heard to disavow its own corporate structure, fashioned for its own business convenience, or to deny the existence of the indebtedness between its affiliated corporate instrumentalities. *See General Trading Co. v. Director, Div. of Taxation,* 83 *N.J.* 122, 136–37 (1980); *Household Finance Corp. v. Director, Div. of Taxation,* 36 *N.J.* 353, 363 (1962); *Somerset Apts. v. Director, Div. of Taxation,* 134 *N.J.Super.* 550, 556–57 (App.Div. 1975).

The complicated federal framework offers a tax advantage to those able to perform the necessary corporate maneuvers to come within its provisions and imposes a tax burden upon "the less adventurous and the less litigious." *See generally* Roberts, "A Report on Complexity and Income Tax," 27 *Tax L.Rev.* 325, 330 (1972) ("a study of the reasons for the 'appallingly complicated' [federal] tax law[s] must begin with Congress"). Today, with respect to these particular tax provisions, the Court has repudiated this State's long-established and commendably straightforward statutory mandates and policies. For more than thirty years the statutory and administrative scheme uniformly applied an objective standard in the measurement of net worth for franchise tax purposes. It has consistently eschewed a subjective test involving an appraisal of the taxpayer's particular economic, business or tax motives in structuring its inter-

corporate relationships and operations. The Court now super-imposes the Internal Revenue Code upon the State's Corporation Business Tax Act. In doing so, it provides the corporate taxpayer with a State tax windfall, which it can add to the federal tax benefits it has otherwise secured by arranging its affairs to avoid adverse federal tax consequences.

I therefore dissent.

Justice O'HERN joins in the dissenting opinion.

*For reversal*—Justices CLIFFORD, SCHREIBER, POLLOCK and GARIBALDI—4.

*For affirmance*—Justices HANDLER and O'HERN—2.